STATE OF MAINE *vs.* GEORGE W. MARTIN.

Kennebec.        Opinion, October 13, 1936.

450

*Francis H. Bate,* County Attorney, for State of Maine.
*Joseph E. F. Connolly,*
*Arthur F. Tiffin,* for respondent.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

DUNN, C. J.    The counts in the indictment, six in all, are for the common-law crime of bribery.

Each count, so far as need be recited here, alleges that:

"George W. Martin of Augusta in said County of Kennebec, on the twenty-third day of August in the year of our Lord one thousand nine hundred thirty-four at Augusta in said County of Kennebec being then and there entrusted with a public duty, to wit, being then and there in charge of the clothing warehouse of the Emergency Relief Administration of the State of Maine at said Augusta, engaged in the distribution of clothing for the relief of distress within the State of Maine and in the purchase of said clothing for distribution for the relief of distress within the State of Maine under the supervision of and subject to the approval of one John A. McDonough, Administrator of the Emergency Relief Administration of the State of Maine, unmindful of and not regarding the trust so reposed in him, the said George W. Martin, but perverting the trust so reposed in him, the said George W. Martin, and contriving and intending the citizens of the State of Maine for the private gain of him, the said George W. Martin, to oppress and impoverish and to impede and obstruct the general welfare of the said State of Maine and to impede and obstruct the relief of the distress of the citizens of the said State of Maine, under the color of the trust so reposed in him, the said George W.

Martin, a certain sum of money, to wit, the sum of . . . hundred dollars from one John H. Vickery of Brewer in the County of Penobscot in the State of Maine, then and there the agent of W. S. Emerson Company of Bangor, Maine, to influence him, the said George W. Martin, so that the said John H. Vickery, agent as aforesaid of said W. S. Emerson Company, might obtain orders for clothing from said Emergency Relief Administration of the State of Maine for said W. S. Emerson Company, then and there unlawfully, unjustly and extorsively did accept, receive and have . . . ."

After unsuccessfully pleading that offense, if any, did not directly affect the State of Maine or its population, but was distinctively against the United States, respondent entered his plea of not guilty, and was put on trial by jury. The judge, in charging, instructed the jury to return, as to the first count, verdict of not guilty, assigning the applicable evidence insufficient to warrant conviction. As to every other count, the verdict was guilty.

The case is forward on exceptions: (1) To the overruling of the plea setting up absence of jurisdiction of the court; (2) to a portion of the charge; (3) to the denial of motion, by respondent, after the conclusion of all the evidence, and before the charge was given, for the direction of a verdict in his favor.

The main question arising on the record, and which only it seems necessary to consider, is whether the motion already mentioned, the ground of which was a failure of the prosecutor to offer proof, either positive or inferential, to establish guilt against the prisoner, on issues presented by his plea, should have been granted. In other words, respondent contended, at the trial, that no evidence to prove facts, proof of which would be indispensable, had been introduced; that there was an entire failure of proof; indeed, that the facts in evidence tended to negative material allegations in the indictment.

The rule of the failure of proof is not one of mere technicality, but goes to the upholding of constitutional law and procedure. The fundamental rule, that in all criminal prosecutions, the accused shall have the right to demand the nature and cause of the accusation, is embodied, as a part of the declaration of rights, in both State and Federal Constitutions. Constitution of Maine, Article 1,

Section 6; Amendment VI to Constitution of the United States.

The general principles of civil and criminal liability are the same. It is a precept in actions of law, that to entitle a plaintiff to recover, he must allege in his declaration all facts necessary to be proved, and what is proved, or that of which proof is offered, must correspond essentially with the allegation in his pleading. *Perkins* v. *Cushman,* 44 Me., 484; *Swanton* v. *Lynch,* 58 Me., 294.

If an indictment apprises the respondent in such manner that he may avail himself of the plea of former jeopardy, slight variations between it and the proof do not rate as departures from substance, nor constitute a failure of proof. *State* v. *Littlefield,* 122 Me., 162, 119 A., 113.

But a variance between allegation and proof, or a failure of proof, as to constituent elements, is fatal. *Swanton* v. *Lynch,* supra.

To illustrate, in respect first to civil, next to criminal, proceedings:

In an action for negligence, it is not proper for the plaintiff to allege one thing as the proximate cause of his injury, and upon the trial prove another. *Shaw* v. *Boston & Worcester Railroad Corporation,* 8 Gray, 45. A declaration under one statute was not supported by proof under some other statute. *Eveleth* v. *Gill,* 97 Me., 315, 54 A., 756. An allegation of sale was not supported by proof of a mortgage. *State* v. *Seguin,* 98 Me., 285, 56 A., 840.

Allegation must be specific and accurate, that defendant may prepare to meet it. And proof must follow allegation. *State* v. *Seguin,* supra.

Paltry variance, however, mere refinement of pleading, lack of technical form, when the person and the case may be rightly understood, are not truly important. *State* v. *Littlefield,* supra.

What is the offense set forth in the indictment?

On a fair reading, accusation was framed, and the trial was conducted, for and against contention of the prosecution, that respondent, in perversion of trust confided in him by the State of Maine, in connection with its emergency relief administration, accepted bribes.

The respondent was entitled to be tried only for crime the commission of which was laid against him. He might have been convicted, under the indictment, on proof, among other things, beyond a

reasonable doubt, of the existence of an emergency relief administration, as a public department, or activity, of the jurisdiction. The indictment clearly avers such an administration; the allegation could not be omitted without affecting crimination.

There was no evidence whatever tending to prove the existence of an Emergency Relief Administration of the State of Maine.

It might be answered that in 1933, during a period of economic depression and widespread unemployment, the Congress of the United States passed a law, which is still in force, called, for short, the Federal Emergency Relief Act of 1933, (15 USCA, Secs. 721, 728) which, on applications by the governors of the several States, made funds available for the alleviation of persons in distress; and that, from the evidence presented, the jury could have found that respondent, while engaged in Maine, under the Federal Act, betrayed for money, public trust.

The powers of government are, by the prevailing dual system, distributed between the categories of government of two sovereigns, one the State and the other the Nation. The people live under two distinct governments, each independent within its own sphere of action. *McCulloch* v. *Maryland*, 4 Wheat., 316, 4 Law ed., 579.

While a State can have no existence, politically, outside the Constitution of the United States, and although cooperation between the State and the Union of the States is highly desirable, nevertheless the States are not in any true and complete sense inferior to, or dependent upon, the United States.

The States exercise, as to all control not delegated to the United States, or prohibited to the States, that public authority which commands in civil society, and orders and directs what each citizen is to perform, to obtain the ends of its institution. *Note to Bannock County* v. *Bell*, 101 A. S. R., 158; *New Hampshire* v. *Louisiana*, 108 U. S., 76, 27 Law ed., 656. Subject to these restrictions, the State of Maine, so long as it does not conflict with the Federal Constitution, is, with regard to regulating its own internal affairs, preeminent.

"The task of the Constitutional Convention," Mr. Norton has said, "was not to construct a government from the foundation up. There had already been firmly set by experience thirteen basestones in the form of State republican governments. Upon these, and for

the benefit of their population as a whole, the National structure was placed. This super-government was to deal with foreign nations, and also to administer at home all matters of National (as distinguished from State or local) character. The National government was to be supreme in its domain, and the State governments were to be sovereign in all affairs not National or foreign." Norton, The Constitution, p. xii.

The sovereignty of a State extends to everything which exists by its own authority, or is introduced by its permission.

To return to the Act, cited above, of 1933.

Congress legislates for the general national welfare. The enactment of the law, providing for the assistance of needy persons, was national in scope and purpose.

The Act created the office of Federal Emergency Relief Administrator. That official could, and can, to carry the law to objective, appoint officers and employees; and, to aid in furnishing relief and employment, and in relieving hardship and suffering, allocate, what the Act denominates "grants" of funds, to State units.

The Legislature of Maine neither accepted nor rejected the provisions of the congressional legislation.

Money, however, was "granted" to the State, on application by the Governor. Such money appears to have been used for relief.

The "granted" money never became the subject of local legislative action.

The State,—no official, no employee of the State, as such,—had title to, nor control of the funds apportioned by the United States, nor of food, clothing, or other supplies purchased therewith.

What the state of the law would be if the funds and supplies had become the property of the State, it is unnecessary to decide; the instant case does not involve the point.

The Federal Act empowered every incumbent of State gubernatorial office to make application for bounty. Competency could have been invested differently, but, Congress having placed it in the Governor, that Maine official acted under Federal authority; solely in facilitation of, and to effectuate, Federal plan and program.

The drafts, or checks, which the Governor received, in response to applications, were endorsed and delivered over, that the money so represented might be disbursed conformably to Federal super-

vision, within a portion of the territory of the United States, namely, that part comprising in standing, at home and abroad, the State of Maine in the United States.

Thereupon the Governor had, under the Act, nothing more to do, until, occasion arising, he should apply again.

There was cooperation concerning the administration of relief, in that the State Controller and the State Treasurer, and their assistants, lent administrative help, but administration was always Federal; funds were so earmarked; all reports of expenditures were made to the United States, and unexpended balances accounted for, accordingly.

Emergency relief administration in Maine was by the United States, and not by the State.

A case in Arkansas accords with the view here taken. *Wiseman, State Commissioner* v. *Dyess, Administrator of Emergency Relief,* 72 S. W. (2d), 517. The same case was again before the court, on insistence that the agreed statement of facts, on which the first case had been decided, was erroneous, but original decision remains unchanged. *Dyess, Administrator* v. *Wiseman, Commissioner,* 76 S.W. (2d), 979. See, also, *Langer* v. *United States,* 76 Fed. (2d) 817; *Madden* v. *United States,* 80 Fed. (2d) 672.

The rule governing the direction of verdicts in trials for crime is that when the evidence is so defective or weak that a verdict based upon it could not be allowed to stand, the trial court, on being moved thereto, should direct a verdict for the accused. *State* v. *Cady,* 82 Me., 426, 19 A., 908; *State* v. *Simpson,* 113 Me., 27, 92 A., 898; *State* v. *Grondin,* 113 Me., 479, 94 A., 947; *State* v. *Benson,* 115 Me., 549, 98 A., 561; *State* v. *Davis,* 116 Me., 260, 101 A., 208; *State* v. *Gustin,* 123 Me., 307, 122 A., 856.

A refusal, at the close of the evidence on both sides, to so direct, is ground of exception. *State* v. *Simpson,* supra; *State* v. *Grondin,* supra; *State* v. *Shortwell,* 126 Me., 484, 139 A., 677.

The indictment is for one crime; the proof, if it establishes crime, does not establish the commission of that which accusation lays.

Exception to the refusal to direct must be sustained.

This conclusion obviates investigating the other exceptions.

As to the denial of directed verdict:

*Exception sustained.*