STATE

*vs.*

JOHN SULLIVAN

Aroostook.   Opinion, July 13, 1951.

*James P. Archibald,* for State of Maine.

*Donald Sweeney,* for respondent.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J.   This case comes to the Law Court from the Superior Court for Aroostook County, on exceptions by the respondent to the denial of his motion for a directed verdict.

The complaint against the respondent, John Sullivan, brought in the Caribou Municipal Court, alleged that the respondent while under the influence of intoxicating liquor attempted to operate a motor vehicle "by then and there starting the motor of said automobile, and releasing the brakes." The respondent pleaded not guilty in the Municipal Court, examination was waived, a finding of guilt made, and appeal to Superior Court taken. The respondent was tried before a jury at the September term, 1950, of the Superior Court. At the close of the testimony the respondent moved for a directed verdict which was denied and exceptions taken.

The evidence clearly showed that the respondent's automobile, with the hood up, was parked on the Washburn Road in Caribou, and a mechanic, one Freeman Dixon, was standing on the bumper and working on the engine. The mechanic requested that the respondent get in the car and start the motor for him in order that the mechanic might test the fuel pump. The mechanic fed the gas by hand to keep the engine running, after the engine was started. The respondent's car was parked on a grade with the mechanic's pickup truck parked a foot, or a foot and a half, below and to the rear of the respondent's vehicle. While the mechanic was at work on the respondent's car and controlling the supply of gas with his hand, the respondent was sitting in the driver's seat. No power was applied from the motor to the wheels. The respondent's car rolled back down the grade a foot, or a foot and a half, until the rear bumper of respondent's car came against the front bumper of the pickup truck. At that instant two police officers were slowly passing, and they stopped at the noise of the slight collision. The officers then questioned the respondent, and decided that there were indications that the respondent had been drinking. One officer stated that the respondent had been "locked up once before." They then arrested the respondent for attempting to operate a motor vehicle while under

the influence of intoxicating liquor. No evidence was offered by the respondent to rebut the State's claim that he was under the influence. The respondent did not testify. The officers stated in testimony that the engine of the respondent's car was "roaring" as they slowly approached the scene, and it would be "fair to say" that if the car had been in gear there would probably have been a greater crash than was heard by them. The mechanic testified that he told the respondent to shut off the motor at about the time when the officers were passing, and that the car then rolled back. The fact is no doubt fully stated in the State's brief in this manner: "as respondent was shutting down his car, it rolled back and came to rest with a considerable crash against the pick up." The mechanic did not know who drove the respondent's car to the place where it was parked, and when he got there to make repairs on the fuel pump, there was no one in the car and the hood was then up. The mechanic saw the respondent and several members of the respondent's family in the vicinity of the car when the mechanic arrived.

Section 121 of Chapter 19 of the Revised Statutes (1944), provides as follows: "Whoever shall operate or attempt to operate a motor vehicle upon any way, or in any other place when intoxicated or at all under the influence of intoxicating liquor or drugs, upon conviction, shall be punished. . . ." The purpose of this statute is to protect persons and property from loss or injury, by the movement of a motor vehicle operated by a person while intoxicated or at all under the influence of liquor or drugs. *State* v. *Cormier*, 141 Me. 307; *State* v. *Mann*, 143 Me. 305.

The legislature, by the terms of this statute, has distinguished between the operation of a car, and the attempt to operate. The commission of the crime of operating while under the influence of liquor or drugs, also includes of necessity, that the person charged with an attempt to operate

intended to operate. *Carson*, Petitioner for Writ of Error, 141 Me. 132; *State* v. *Jones*, 125 Me. 42.

According to popular acceptance, the meaning of the term "to operate a motor vehicle" is the same as to "drive" it. It usually means that a person must so manipulate the machinery that the power of the motor is applied to the wheels to move the automobile forward or backward. The starting of the motor, however, may under existing circumstances be sufficient, if there is the intention to move the car. "The 'operation' intended to be curtailed by the statute is not either complete or extended." Murchie, J. in *State* v. *Roberts*, 139 Me. 273, 275, and cases there cited. See also 61 .C. J. S. "Motor Vehicles," 720, Section 628; 5 Am. Jur. "Automobiles," 917, Section 771. Operation might be inferred from the fact that an automobile moved ahead a short distance with the engine running and with the respondent in the driver's seat, and the forward movement could not be accounted for by vibration or a slight depression in front of the automobile. *State* v. *Jalbert*, 142 Me. 407.

Where an attempt to operate is charged, there must be an *intent* to commit the offense of operating. Unless the acts done were done with the intent to operate the motor vehicle while under the influence of liquor, no offense is committed. *State* v. *Jones*, 125 Me. 42, where the alleged act was to "insert and turn the key of said automobile and put his foot upon the self starter." "To constitute an attempt there must be something more than mere intention or preparation. There must be some act moving directly towards the commission of the offense after the preparations are made." *State* v. *Doran*, 99 Me. 329, 332.

The rule governing the direction of verdicts in a criminal case is that when the evidence is so defective or weak that a verdict based upon it cannot be sustained, the trial court, on motion, should direct a verdict for the respondent. A re-

fusal to so direct is valid ground for exception if all the evidence is. in. *State* v. *Martin,* 134 Me. 448; *State* v. *Shortwell,* 126 Me. 484; *State* v. *Roy,* 128 Me. 415.

In this case at bar a verdict for the accused should have been directed. The record of the evidence brings it within the foregoing rule. A verdict of guilty on the facts here could not and cannot be sustained. An attempt to commit the crime of operating a motor vehicle while under the influence of intoxicating liquor is the charge. The evidence of intent is wholly lacking. In fact the proof introduced by the State shows that there was no such intent. This record shows the necessity for the rule regarding a directed verdict in order to protect the constitutional rights of the individual, and to prevent a jury through some bias or prejudice from convicting without evidence, and, despite instructions to the contrary, to take the fact that the respondent did not testify as proof of the offense charged. The respondent did not take the stand and did not present evidence to rebut the question that he was under the influence of intoxicating liquor. That he did not take the stand at this trial, together with incidental statements, such as that of one officer that the respondent had previously given trouble, were sufficient for the jury to "guess him into jail." Failure of proof is not a technicality. Proof of the material elements that constitute the crime is vital in order to uphold constitutional law and procedure. *State* v. *Martin,* 134 Me. 448.

The proof introduced here, only shows that the respondent's car was parked on the grade, with the hood up, and with a mechanic standing on the bumper to make tests or repairs on the engine. The motor was started by the respondent, who got into the driver's seat at the request of the mechanic. The mechanic was feeding the gas by hand to determine if the fuel pump was in working order, and no power was transmitted from the motor to the wheels or intended to be so transmitted. The respondent shut off the

motor at the direction of the mechanic. Then, as the State says in its brief, "as respondent was shutting down his car, it rolled back and came to rest with a considerable crash against the pick up." The evidence was not sufficient to enable a jury to legally find the respondent guilty of the offense charged, beyond a reasonable doubt. In the case of *State* v. *Jalbert*, 142 Me. 407 cited by the State, the movement of the car could be inferred as due to the operation of the car by the respondent, because there was no other way to account for it. Here the backward motion of inches can be accounted for under the evidence, as due to vibration and down grade. The movement was also indirectly proved by the testimony of the State's witnesses as due to vibration and grade. The inference that must be drawn from the testimony in this case is directly opposite to the inference that could be drawn in the *Jalbert* case.

When a criminal intent is at issue and a conclusion consistent with innocence is reasonable, the respondent is entitled to the benefit. *State* v. *Wagner*, 141 Me. 403, 44 Atl. (2nd) 821. "Guesswork is not the moral certainty of guilt that the law requires. Conjecture, surmise, and suspicion do not constitute proof beyond a reasonable doubt." *State* v. *Morton*, 142 Me. 254, 258; *State* v. *Roy*, 128 Me. 415; *State* v. *Baron*, 135 Me. 187.

*Exceptions sustained.*