STATE OF MAINE

*vs.*

CYRIL D. CLUKEY

Piscataquis.   Opinion, October 10, 1951.

*Louis Villani,* for State.

*Bartolo M. Siciliano,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J.   This case comes before us from the Superior Court of Piscataquis County on exceptions by the respondent to the denial of his motion for a directed verdict and to the admission of certain exhibits and testimony offered by the State.

The respondent was indicted by the Grand Jury of Piscataquis County at the September Term, 1950, of the Superior Court of the crime of assault with intent to commit rape as defined under Chap. 117, Sec. 12, R. S., Me. 1944. The indictment, omitting the formal parts, charges that the respondent

"on the twenty-second day of April, A. D. 1950 at Guilford in the County of Piscataquis and State of Maine, feloniously did assault one Althea A. Bearce, a female under the age of Fourteen years, to wit, of the age of twelve years, with intent her, the said Althea A. Bearce, violently, by force and against her will, feloniously and unlawfully to ravish and carnally know and abuse,"

One of the issues raised by the bill of exceptions is whether the indictment sufficiently charges an assault with an intent to commit a rape on a female child under the age of fourteen years in violation of R. S., 1944, Chap. 117, Sec. 12, or charges an assault and battery. To decide this issue we must examine R. S., 1944, Chap. 117, Sec. 10 and Sec. 12, relating to the crime of rape. R. S., 1944, Chap. 117, Sec. 12, is as follows:

"Sec. 12. Assault with intent to commit rape; penalty. R. S. c. 129, Sec. 23. Whoever assaults a female of 14 years of age or more, with intent to commit a rape, shall be punished by a fine of not more than $500, or by imprisonment for not more than 10 years. If such assault is made on a female under 14 years, such imprisonment shall be for not less than 1 year, nor more than 20 years."

R. S., 1944, Chap. 117, Sec. 10, is as follows:

"Sec. 10. Rape, definition; penalty. R. S. c. 129, Sec. 16. Whoever ravishes, and carnally knows, any female 14 or more years of age, by force and against her will, or unlawfully and carnally knows and abuses a female child under 14 years of age, shall be punished by imprisonment for any term of years."

To the indictment the respondent entered a plea of not guilty and after trial the jury returned a verdict of guilty.

In *Moody* v. *Lovell*, 145 Me. 328, 75 A. (2nd) 795 (1950), this court had occasion to consider the essential requisites of an indictment charging assault with intent to commit

rape on a female under the age of fourteen years. We held in that case that the word "rape" as used in Sec. 12 of R. S., 1944, Chap. 117, *supra,* means the offense for which punishment is provided in Sec. 10, *supra,* of the same chapter which defines rape. It includes not only the ravishment of a female of fourteen or more years of age by force or against her will but also the unlawful carnal knowledge and abuse of a female child under the age of fourteen years. We further held that the phrase "with intent to commit a rape" as used in R. S., 1944, Chap. 117, Sec. 12, means an intent to commit those acts punishable under Sec. 10, including unlawfully and carnally knowing and abusing a female under fourteen years of age. We further held that an assault with intent to commit a rape upon a female child under fourteen years of age requires the specific intent to unlawfully and carnally know and abuse such female child. We further held that the statutory crime of assault with intent to commit a rape requires proof of a specific intent and that the indictment under the long established rules of criminal pleading requires that the assault be made with the required specific intent. The crime forbidden by Sec. 10 is "unlawfully and carnally knowing and abusing" and the indictment for assault with intent to commit a rape must set forth that the assault was made with such intent. The indictment here in question does use the words "with the intent" and in our opinion complies with the rules laid down by this court in *State* v. *Lynch,* 88 Me. 195, 33 A. 978, quoted in *Moody* v. *Lovell, supra,* with respect to the use of the words of the statute setting forth the elements of a statutory crime which requires a specific intent. This rule was also approved in the recent case of *Smith, Petitioner* v. *State,* 145 Me. 313, 75 A. (2nd) 538. We, therefore, hold that the words used in this indictment sufficiently charge the respondent with assaulting a female child under the age of fourteen years, to wit, the age of twelve years, with assault

with intent to commit a rape and sufficiently charge a viola-
tion of R. S., 1944, Chap. 117, Sec. 12.

The record discloses that on the night of April 22, 1950,
at Guilford, Maine, one Althea A. Bearce and a girl friend
went to the moving pictures. They left the theatre about
8:30 P. M. and walked together to the corner of Hudson
Avenue and Oak Street where they stopped in front of the
Guilford Trust Company for a few minutes and held a con-
versation. They then separated and the girl friend walked
on Hudson Avenue in the direction of her home and said
Althea A. Bearce walked on Oak Street toward her home.
While walking she was accosted by the respondent whom
she did not know and who took her by the arm and walked
with her for a short distance. There was evidence that said
Althea A. Bearce stated to the respondent that he had
walked with her far enough. The respondent did not leave
and continued to walk with said Althea A. Bearce for a fur-
ther distance according to the evidence to a point in front
of the Godsoe house where he asked her for a kiss and she
refused. Said Althea A. Bearce then testified that the re-
spondent threw her down and that she screamed and that
he then put his hand over her mouth and that he put his
hand under her dress and tore her underwear; that during
the struggle a button was torn from her coat and found the
next morning on the Godsoe lawn; that the respondent im-
mediately left and said Althea A. Bearce got up from the
ground and went to her home. There was also evidence
that the respondent and said Althea A. Bearce were seen in
the vicinity of the Godsoe house by a witness who testified
that he passed them on Oak Street and saw them again on
the lawn of the Godsoe house and subsequently heard a
scream and turned and saw said Althea A. Bearce running
down the sidewalk. There was other testimony which to a
certain extent was corroborative of the above facts.

Our court has many times considered the rule governing the direction of verdicts in a criminal case. We said in *State* v. *Sullivan,* 146 Me. 381, 82 A. (2nd) 629 (1950) :

> "The rule governing the direction of verdicts in a criminal case is that when the evidence is so defective or weak that a verdict based upon it cannot be sustained, the trial court, on motion should direct a verdict for the respondent. A refusal to so direct is valid ground for exception if all the evidence is in."

See *State* v. *Martin,* 134 Me. 448, 187 A. 710; *State* v. *Shortwell,* 126 Me. 484, 139 A. 677; *State* v. *Roy,* 128 Me. 415, 148 A. 144.

With the above rule in mind, we have carefully examined the record with a view of determining whether or not the evidence was so defective or so weak that a verdict based upon it could not be sustained and have come to the conclusion that the jury was waranted in finding the respondent guilty beyond a reasonable doubt. The evidence as reported presents a typical case which under our law is for the consideration of the jury. They saw and heard the witnesses for the State (the respondent introduced no evidence) and it was within their province to determine not only what weight should be given to the testimony but also what part or parts of it should be believed in reaching their conclusion. See *State* v. *Bragg,* 141 Me. 157, 40 A. (2nd) 1; *State* v. *Cox,* 138 Me. 151, 163, 23 A. (2nd) 634; *State* v. *Merry,* 136 Me. 243, 8 A. (2nd) 143; *State* v. *Manchester,* 142 Me. 163, 166, 48 A. (2nd) 626; *State* v. *McKrackern,* 141 Me. 194, 41 A. (2nd) 817; *State* v. *Hudon,* 142 Me. 337, 350, 52 A. (2nd) 520.

What we have stated above disposes of the case unless the respondent has been prejudiced by the introduction and admission of three exhibits of wearing apparel consisting of a coat worn by said Althea A. Bearce at the time of the

incident, a button which purported to have been torn from the coat at the time and subsequently found on the Godsoe lawn the next morning by a witness for the State and certain underwear alleged to have been worn by said Althea A. Bearce at the time, which underwear the State claimed, through its witnesses, was torn by the respondent at the time of the incident. Respondent claimed that the exhibits were not properly identified, had not been at all times in proper custody, and that there was no evidence to show the exhibits were in the same condition as they were on the night of the alleged asault. There is testimony in the record, however, which clearly shows that the exhibits were substantially in the same condition as at the time of the incident except that the underwear had been washed. There was also ample testimony relating to the custody and control of the exhibits. The objections raised by the respondent to the introduction of the exhibits if they have any merit, go solely to the weight to be given to the exhibits. They were properly admitted. Certain other exceptions to the evidence were taken but were not properly incorporated and brought forward in the bill of exceptions and therefore are not properly before us and cannot be considered. See *State* v. *Townsend*, 145 Me. 384, 71 A. (2nd) 517.

There appears to be no merit in any of the exceptions and the mandate will be

*Exceptions overruled.*
*Judgment for the State.*