STATE of Maine

v.

Donald P. DAVIS.

Supreme Judicial Court of Maine.

March 16, 1979.

David W. Crook (orally), Deputy Dist. Atty., Skowhegan, for plaintiff.

Butler & Bilodeau by Wm. Thomas Hyde (orally), Skowhegan, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

Following a bench trial in the Superior Court (Somerset County) the presiding Justice found defendant Donald P. Davis guilty of having committed, on January 27, 1978, the offense of "driving to endanger", in violation of 29 M.R.S.A. § 1314. In his appeal from the judgment of conviction defendant makes two contentions: (1) the conviction is a nullity because the statute establishing the crime charged against defendant is void, as unconstitutionally vague; (2) in any event, the evidence fails to support the conviction.

We reject defendant's constitutional claim.

Were the words contained in 29 M.R.S.A. § 1314[1] the only language defining the crime of "driving to endanger", defendant would have a strong argument that the words

> "drive any vehicle . . . in such a manner as to endanger any person or property"

fail to give a person of ordinary intelligence fair notice of the conduct that is prohibited and, therefore, do not meet the requirements of constitutional due process of law. Courts of other jurisdictions have held essentially similar "driving to endanger" void for vagueness. *State v. Adams,* 180 Neb. 542, 143 N.W.2d 920 (1966); *State v. Pigge,* 79 Idaho 529, 322 P.2d 703 (1957); *People v. Firth,* 5 Misc.2d 439, 159 N.Y.S.2d 794 (1957).

■ We conclude, however, that in this jurisdiction the new criminal code has pro-duced an effective amendment of 29 M.R.S.A. § 1314, as of May 1, 1976, by *requiring* that additional language be inserted in the text. The provisions of 17–A M.R.S.A. §§ 6 and 11(5)[2] establish in combination that some "culpable mental state", of those defined in Section 10 of the code, is required as an essential of any crime, whether defined in the code itself or in a criminal statute outside the code, unless a contrary legislative intent plainly appears. We are satisfied that the Legislature has not manifested a plain intent that one whose operation of a motor vehicle happens to endanger a person or property shall be criminally liable even though such operation does not involve a "culpable mental state." Accordingly, we decide that 29 M.R.S.A. § 1314 must be read to include as an essential element "criminal negligence"[3] which is the lowest level of the "culpable states of mind" described in 17–A M.R.S.A. § 10(4), more particularly because 29 M.R.S.A. § 1311 establishes a *separate* crime which it defines *expressly* to include as an essential element the next more culpable mental state, "recklessness."

■ Interpreted as including "criminal negligence", 29 M.R.S.A. § 1314 withstands defendant's void for vagueness attack since a standard is provided sufficient to allow a person of ordinary intelligence to assess whether his conduct in operating a *motor* vehicle violates the statute. *State v. Houde,* 150 Me. 469, 114 A.2d 366 (1955).

Our holding that "criminal negligence" is an essential element of the crime of "driv-

1. 29 M.R.S.A. § 1314 provides:
   "No person shall drive any vehicle upon a way or in any other place in such a manner as to endanger any person or property. Any violation of this section shall be a misdemeanor."

2. Section 11(5), contained in Chapter 1 of 17–A M.R.S.A., states, as here pertinent:
   "If a statute defining a crime in this code does not expressly prescribe a culpable mental state with respect to some or all of the elements of the crime, a culpable mental state is nevertheless required . . . ."
   Section 6 provides:
   "The provisions of chapters 1, 3, 5, 7, 47, 49, 51 and 53 are applicable to crimes defined outside this code, unless the context of the statute defining the crime clearly requires otherwise."

3. Given the Legislature's plain determination, as revealed in 17–A M.R.S.A. § 10(4), to require something more than ordinary "civil" negligence to trigger criminal liability, and the well recognized rule of statutory construction dictating that criminal statutes be strictly construed in favor of the defendant, *Tuttle v. State,* 158 Me. 150, 153, 180 A.2d 608, 610, cert. denied 371 U.S. 879, 83 S.Ct. 151, 9 L.Ed.2d 116 (1962); *State v. Koliche,* 143 Me. 281, 283, 61 A.2d 115, 116 (1948), we decide that criminal liability under 29 M.R.S.A. § 1314 cannot arise from ordinary negligence in the civil sense.

ing to endanger" here charged against defendant creates a problem regarding the second issue raised on appeal, whether on the record before us the conviction can be sustained.

The rationale of the State's case against defendant was that he "endangered" lives or property solely because he drove his Toyota automobile upon a bridge which was a *dangerous place* for the automobile to be operated. To support this theory the State produced witnesses who testified that the bridge crossed over an area of a river characterized by "swift rapids" and "white water." While they differed as to the height of the bridge above the river, the witnesses made plain that it was enough to be very dangerous for an automobile that might go over the side of the bridge. Although a wire mesh fence three to four feet high traversed the entire length of the bridge on each side, the witnesses testified that these sidings were not strong enough to withstand the force of an errant automobile. The bridge had been constructed to serve as a railroad bridge across the Kennebec River in Skowhegan Village (which would make it strong enough to support an automobile), but, according to the testimony of the State's witnesses, it was customarily used as a footbridge for pedestrians, even though not posted as restricted for pedestrian use. The entrance to the bridge was constricted by obstructions deliberately placed so that it was virtually impossible for large automobiles to enter upon the bridge.

■ However, in the evaluation of the "manner" of defendant's operation of his automobile the danger of the place in which defendant drove, while relevant, cannot be made, here, the *sole* factor determining whether the manner of operation was "criminally negligent" and, as such, an "endangering" of persons or property. Also to be taken into account was why defendant was in the dangerous place and the extent to which, once there, defendant sought to avoid allowing the risks of danger to materialize. This would involve consideration of defendant's extremely slow speed, three to four miles per hour, in crossing the bridge, his general driving skill, his physical and mental condition and degree of alertness and attention, the size of the automobile, its condition and the condition of its tires, the lighting and weather conditions. Also to be evaluated would be defendant's opportunity to use the mesh wire fence along each side of the bridge as a guide to keep him on course, even if the fence might not be strong enough to retain the automobile were it to go off course.

A careful reading of the Superior Court Justice's remarks in announcing his decision of defendant's conviction leaves us uncertain whether he required a criminal negligence standard and whether he considered all the circumstances of defendant's manner of operating his motor vehicle across the footbridge, not merely the bridge as a dangerous place. We must therefore sustain defendant's appeal.

The entry is:

Appeal sustained; judgment of conviction set aside; case remanded to the Superior Court for further proceedings.

DELAHANTY, J., did not sit.