STATE of Maine

v.

Lelwyn C. WEST.

Supreme Judicial Court of Maine.

June 25, 1980.

David M. Cox, Dist. Atty., Gary F. Thorne, orally, Michael Pagnozzi, Asst. Dist. Attys., Bangor, for plaintiff.

Hall, DeSanctis & Schultz by Julio DeSanctis, III, orally, Bangor, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY and GLASSMAN, JJ.

**6**

GODFREY, Justice.

Tried by a jury in Superior Court, Penobscot County, defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor. (Paragraph A of subsection 10 of 29 M.R.S.A. § 1312 (1978).)[1] On appeal, the defendant contends that the trial justice erred in refusing to give the jury five "instructions" she requested.[2] Defendant first requested the trial judge to charge that a culpable mental state is required as an essential element of any crime, citing *State v. Davis*, Me., 398 A.2d 1218 (1979). She requested also an instruction that "intoxication is not a defense unless it establishes a reasonable doubt as to the existence of an element of the offense" and an instruction that "involuntary intoxication will exonerate from all crimes." Finding no error, we deny the appeal.

Early in the morning on May 13, 1979, the defendant was stopped by Bangor police officer Clark when he observed her driving her automobile in an erratic manner. She was arrested after officer Clark decided that she was operating the vehicle while under the influence of intoxicating liquor. At trial, it was established that the defendant was under the treatment of a psychia-

trist who had prescribed Thorazine, a tranquilizer, as part of her treatment. There was evidence that at 8:00 p. m. on May 12 defendant consumed one of the prescribed pills to calm her nerves; that she went thereafter with a friend to a bar where she consumed one "screwdriver" (vodka and orange juice) between 9:00 p. m. and 12:30 a. m.; that she took another pill at about 12:45 a. m.; that she and her friend went to another bar where she drank half of another "screwdriver". She was arrested after driving away from the second bar. She asserted that she was not intoxicated from the alcohol alone but from the synergistic effect of the combination of the tranquilizer and the alcohol.[3]

The psychiatrist testified that he had warned defendant to exercise caution in mixing the Thorazine with alcohol but had not told her in so many words not to take the two together. The defendant testified that she did not know about the effects of consuming alcohol after taking the medication even though she remembered the psychiatrist's warning. She had seen on the bottle containing the pills warnings that said to use caution when ingesting the pills with alcohol and to use caution if driving

---

1. At the time of the alleged offense, paragraph A provided, in pertinent part, as follows:

   Notwithstanding the provisions of Title 17–A, section 4–A, any person who, while under the influence of intoxicating liquor or drugs, shall operate or attempt to operate a motor vehicle within this State shall, upon his first conviction for a violation of this section, be punished by a fine of not more than $1,000 and by imprisonment for not more than 90 days, or by both.

   This provision was amended on June 14, 1979, effective September 14, 1979. P.L.1979, ch. 422, § 2.

2. The defendant's handwritten "Requested Jury Instruction" reads as follows:

   "Now comes the Defendant and requests this Honorable Court to instruct the jury as follows:

   A 'culpable mental state' is required as an essential element of any crime. *State v. Davis* [Me.] 398 A.2d 1218

   Intoxication is not a defense unless it establishes a reasonable doubt as to the existence of an element of the offense. M.R.S.A. 17–A 58–A

Definitions of 'Intoxication' and 'self-induced intoxication' from M.R.S.A. 17–A 58–A

Involuntary intoxication will exonerate as to all crimes and not merely those which involve specific intent as an essential element. *State v. Rice* (Me.) 379 A.2d 140

A definition of involuntary intoxication."

The third and fifth items are not requests for jury instructions in any sense, and the first, second, and fourth items are inadequate, without amplification in the context of evidence admitted at the trial, to serve as fully intelligible requests for instructions. A well-written request for jury instructions should provide the trial justice with the complete wording that counsel wants the trial justice to use in his charge.

3. The defendant in this case was not charged with operating while under the influence of drugs. Defendant does not contend that she should have been charged with operating while under the influence of drugs rather than intoxicating liquor. *See State v. Smith*, 149 Me. 333, 102 A.2d 342 (1953).

after taking the medication because the pills could cause drowsiness.

### I.

█ The defendant asserts that a culpable mental state is required for the crime of operating while under the influence of intoxicating liquor and that reversible error occurred at her trial because the jury was not instructed that the state had to prove a culpable mental state as an element of the offense. According to the defendant, *State v. Davis*, Me., 398 A.2d 1218 (1979), supports her argument.

The decision in *Davis* is not applicable here. In *Davis* we were required to construe section 1314 of the motor vehicle law making it an offense to drive a vehicle "in such a manner as to endanger any person or property." We held that section 1314 was not impermissibly vague because, in the absence of any plain manifestation of a contrary legislative intent, that section is to be regarded as so amended, in effect, by sections 6 and 11(5) of the criminal code as to require one of the "culpable mental states" defined in section 10 of the code as essential to the crime of driving to endanger. We held that there was no manifestation of a contrary legislative intent with respect to section 1314.

Paragraph A of subsection 10 of section 1312, considered in the context of the entire section, is not open to attack on the ground of vagueness, and it is not necessary to resort to the provisions of the criminal code for the purpose of ascertaining its specific meaning. Moreover, the law had been settled, before the criminal code was enacted, to the effect that intent to operate while under the influence was not essential to the crime defined in section 1312(10)(A). *State v. MacNamara*, Me., 345 A.2d 509 (1975). *See State v. Goodchild*, 151 Me. 48, 115 A.2d 725 (1955). *Cf. State v. Sullivan*, 146 Me. 381, 82 A.2d 629 (1951); *State v. Roberts*, 139 Me. 273, 29 A.2d 457 (1942). As we said in *State v. MacNamara, supra* at 511.

The Legislature, in enacting this statute, obviously recognized the dangers inherent in the operation of motor vehicles by persons whose faculties are impaired by the use of alcohol or other drugs and it intended to prohibit such operation under any and all circumstances. . . .

Subsection 1 of section 6 of the criminal code (title 17–A of the Revised Statutes) provides as follows:

The provisions of chapters 1, 3, 5, 7, 47, 49, 51 and 53 are applicable to crimes defined outside this code, unless the context of the statute defining the crime clearly requires otherwise.

Defendant contends that the quoted provision brings into play the provisions of subsection 1 of section 11 of the criminal code, located in chapter 1 of the code, which provide that a person is "not guilty of a crime unless he acted intentionally, knowingly, recklessly, or negligently, as the law defining the crime specifies, with respect to each element of the crime," except as provided in subsection 5.[4]

In ascertaining the "context" of paragraph A of 29 M.R.S.A. § 1312(10) for purposes of determining the applicability of section 6 of the criminal code, we cannot disregard the settled pre-code decisional law to the effect that intent was not an element of the crime of operating a motor vehicle under the influence of intoxicating liquor or drugs. The act of operating while under the influence of intoxicating liquor was itself the crime, and the state was not required before the code to show any particular mental state of the person operating the motor vehicle except that he or she was under such influence. The crime is peculiar in the respect that if intent were required as an element of the offense, situations could arise in which defendants could not be convicted under the statute because they were too intoxicated to form the requisite intent, with the paradoxical and absurd result that the more intoxicated the driver the better his chances of avoiding liability

---

4. The exceptions referred to in subsection 5 relate to statutes defining crimes "in this code". Since the crime of operating under the influence is not a crime defined in the criminal code, the exceptions provided in subsection 5 are not applicable, at least in direct terms.

under the statute. Furthermore, none of the amendments made to section 1312 since the criminal code was adopted has ever been such as to suggest any disagreement on the part of the legislature with our construction of paragraph A of subsection 10.

Having regard to the history and purpose of paragraph A of section 1312(10), we conclude that the provisions of section 11 of the criminal code do not apply to the conduct prohibited by that paragraph.[5]

It is possible to hypothesize situations in which a person under the influence of intoxicating liquor or drugs operates a motor vehicle under duress or in other circumstances that might give rise to applicability of provisions of the criminal code other than section 11. We intimate no opinion as to the proper disposition of such cases if and when they arise. We hold only that the context of 29 M.R.S.A. § 1312(10)(A) clearly requires that section 11 of the code have no application to the offense of operating a motor vehicle while under the influence of intoxicating liquor or drugs.

## II.

The defendant argues that the trial justice erred in refusing to instruct the jury concerning intoxication as a defense or concerning the legal effect of "involuntary intoxication", as distinguished from "self-in-duced intoxication" defined in the criminal code, 17-A M.R.S.A. § 58-A.[6] The defendant contends that her state of impairment was caused by the synergistic effect of Thorazine with liquor. Asserting that she was unaware of the synergistic effect, she claims her intoxication was "involuntary". The trial justice denied the request for instruction on involuntary intoxication "because there was no evidence in the record to warrant such an instruction."

Subsection 1 of section 58-A of the criminal code provides that intoxication is not a defense unless it establishes a reasonable doubt as to the existence of an element of the offense. We have held in this case that the crime defined by 29 M.R.S.A. § 1312(10)(A), is not subject to the provisions of section 11 of the criminal code requiring a "culpable mental state". Since the only elements of the offense charged are operating a motor vehicle and being under the influence of intoxicating liquor while doing so, it follows that intoxication—whether self-induced or not self-induced—cannot establish a reasonable doubt as to the existence of any element of the particular offense here in question. Intoxication was therefore not available as a defense by virtue of section 58-A(1) of the criminal code.

Whatever additional considerations might be presented if there were evidence suffi-

---

**5.** *Cf.* Model Penal Code § 2.05, Comment 3 at 146 (Tent. Draft No. 4, 1955):

These considerations make it tempting to provide, as Williams has suggested, that the "intention to create strict responsibility ought always to be evidenced by the words of the statute." *i. e.* by an explicit statement and not merely by the absence of a form of words denoting a requirement of culpability. This is, however, too severe a test for practical purposes since so much existing legislation that would not satisfy the test has been construed to impose absolute liability. Legislative acquiescence in such constructions, without amendment of the statute, may reasonably be regarded as evincing legislative purpose that the liability obtain. Accordingly, the weaker requirement that such a purpose "plainly appears" goes as far as we think it wise to go. In practice this might well mean either a settled interpretation or explicit statement in the statute. That is,

however, left deliberately to judgment of the courts.

**6.** Subsections 1 and 3 of Section 58-A provide as follows:

1. Intoxication is not a defense unless it establishes a reasonable doubt as to the existence of an element of the offense.

. . . . .

3. As used in this section:

A. "Intoxication" means a disturbance of mental capacities resulting from the introduction of alcohol, drugs or similar substances into the body; and

B. "Self-induced intoxication" means intoxication caused when the actor intentionally or knowingly introduces into his body substances which the actor knows or ought to know tend to cause intoxication, unless he introduces them pursuant to medical advice or under such duress as would afford a defense to a charge of crime.

cient to generate an issue as to whether defendant was "involuntarily" intoxicated, we agree with the trial justice's conclusion that the evidence did not warrant such an instruction. The issue was not generated by the evidence. *See State v. Rice*, Me., 379 A.2d 140, 147 (1977).

■ The term "involuntary intoxication" is not mentioned or defined in the criminal code. However, the code does define "self-induced intoxication" as

.  .  .  intoxication caused when the actor intentionally or knowingly introduces into his body substances which the actor knows or ought to know tend to cause intoxication, unless he introduces them pursuant to medical advice .  .  .  17–A M.R.S.A. § 58–A(3)(B).

If defendant was "intoxicated" at the time of her arrest, her intoxication was self-induced within the meaning of section 58–A(3)(B). Soon before operating a motor vehicle, she had knowingly and voluntarily consumed an alcoholic beverage, knowing that it tended to cause intoxication. When the defendant is charged with operating while under the influence of intoxicating liquor, it is immaterial whether the driver is under the influence of intoxicating liquor alone or a combination of liquor and other substances. *State v. Blier*, Me., 330 A.2d 122, 123 (1974). *See State v. Smith*, 149 Me. 333, 102 A.2d 342 (1953). In the circumstances of this case, in order to find guilt, the jury needed only to find that the liquor contributed to the defendant's impairment. The issue of involuntary intoxication was not generated.

The trial justice was correct in refusing to give instructions relating to intoxication.

Appeal denied.

Judgment affirmed.

All concurring.