ALEXANDER, J., concurring.
[¶25] John M. Burbank was arrested on suspicion of operating under the influence on August 9, 2016. Shortly after his arrest, Burbank's blood alcohol level was measured at .31 grams of alcohol per 100 milliliters of blood or 210 liters of breath-nearly four times the legal limit.[8] The blood test presented a considerable challenge to defense of the charge. Burbank, assisted by creative counsel, proved up to the task. He asserted that, without his consuming any alcohol, his body had spontaneously produced alcohol, and that he was "involuntarily intoxicated," creating a reasonable doubt as to the voluntariness of his .31 blood alcohol content. (Appellant's Br. 2, 11, 13, 17.)
[¶26] Burbank acknowledges that his defense "is an uncommon one, to be sure." (Appellant's Br. 17.) He argues that the trial court, in rejecting his proffered expert testimony, deprived him of his right "to present an otherwise promising defense" creating a reasonable doubt about the voluntariness of his condition. (Appellant's Br. 25-26.)
[¶27] Burbank's defense may be "uncommon" because we explicitly rejected the "involuntary intoxication" defense to an OUI charge nearly forty years ago in State v. West , 416 A.2d 5, 6-9 (Me. 1980).[9] "Since the only elements of the offense charged are operating a motor vehicle and being under the influence of intoxicating liquor while doing so, it follows that intoxication-whether self-induced or not self-induced-cannot establish a reasonable doubt as to the existence of any element of the particular offense here in question." Id. at 8.
[¶28] The Court's opinion, sidestepping the validity of Burbank's "uncommon" defense, directly addresses the merits of the trial court's exclusion of Burbank's proffered experts. Justifying that choice, the Court observes that: "our opinion should not be construed as implicitly accepting the notion that the crime of OUI does not encompass a situation where the alcohol in the accused's system is generated through some endogenous process. The parties have not developed meaningful presentations on that broader question, and the court based its ruling entirely on narrower evidentiary principles. Absent a fully developed record and sufficient advocacy that would allow a proper analysis of that categorical question, we leave its resolution to another day." Court's Opinion ¶ 24. Thus, *860 despite the "uncommon" defense being a central focus of Burbank's arguments, the Court leaves for "another day" the question of whether, after forty years, West remains settled law in the State of Maine.
[¶29] I concur in the Court's opinion affirming the trial court's judgment. I do not concur in or join the Court's reasoning addressing the merits of the exclusion of the proffered experts without first considering whether the proffered expert testimony was relevant to any issue at trial, and perhaps suggesting thereby that involuntariness might be a defense to an excessive blood alcohol charge. If the Court's approach prevails, and the "uncommon" defense is left unaddressed, it may invite many "I didn't know there was vodka in my orange juice" or similar defenses to OUI/EBA charges.[10]
[¶30] The statute prohibiting operating under the influence, 29-A M.R.S. § 2411(1-A)(A) (2018), prohibits operating a motor vehicle "(1) While under the influence of intoxicants; or (2) While having an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath." Thus, OUI is defined to include only two elements: (1) the forbidden conduct of operating a motor vehicle, and (2) the attendant circumstances of being under the influence of intoxicants or having a blood alcohol content of .08 or greater. See 17-A M.R.S. § 32 (2018) ; 29-A M.R.S. § 2411(1-A)(A).
[¶31] On its face, and as we held in West , the statute suggests no mens rea element and no exception for involuntariness; Burbank's brief includes no citation to the contrary. Despite a paucity of supporting precedent, Burbank contends that his auto-brewery syndrome affliction rendered his conduct of operating with a .31 blood alcohol content involuntary, exempting him from criminal liability, or at least creating a reasonable doubt as to his guilt. See 17-A M.R.S. § 103-B(1) (2018).
[¶32] Two years ago, in another OUI appeal, we held that involuntariness is a defense to a crime, but will only "negate the actus reus of a crime when the forbidden conduct was an involuntary act, that is, the conduct was caused by a reflex, seizure, or some other act over which the defendant had no conscious control." State v. Griffin , 2017 ME 79, ¶¶ 17, 19, 159 A.3d 1240 (emphasis in original); see also State v. Morrison , 2016 ME 47, ¶ 9, 135 A.3d 343. "Voluntary conduct is the result of an exercise of [a] defendant's conscious choice to perform [it]," whatever the source of the motivation to do so, "whereas involuntary conduct includes reflex[es], convulsion[s], or other act[s] over which a person has no control." Morrison , 2016 ME 47, ¶ 7, 135 A.3d 343 (alterations in original). "Conscious choice is best understood by what it is not: a reflexive or convulsive action." Id. ¶ 9.
[¶33] To his credit, Burbank does not argue that the alcohol allegedly produced in his gut made his operation of his vehicle physically involuntary or the result of a reflex or convulsion over which he had no conscious control.
[¶34] The constitutional right to present a defense is not unlimited. A defendant's "right to compulsory process does not provide him with 'an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.' " State v. Cross , 11547392" index="44" url="https://cite.case.law/a2d/732/278/">1999 ME 95, ¶ 7, 732 A.2d 278 (quoting *861 Taylor v. Illinois , 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) ); see also State v. Willoughby , 507 A.2d 1060, 1068 (Me. 1986).
[¶35] To be admissible under M.R. Evid. 702, a trial court must determine that proffered expert testimony "(1) is relevant in accordance with M.R. Evid. 401, and (2) will assist the trier of fact in understanding the evidence or determining a fact at issue." State v. Ericson , 2011 ME 28, ¶ 11, 13 A.3d 777. The evidence Burbank sought to present through his proffered experts was irrelevant to any issue that would have helped the jury understand the issues and the evidence. After receiving an offer of proof, the trial court could have-and perhaps should have-excluded the evidence as irrelevant, without hearing evidence regarding the reliability of the evidence. This Court should decide the issue of the involuntary intoxication defense directly rather than appear to acknowledge it by reaching the expert qualifications issue while deferring the issue we decided forty years ago "to another day."
[¶36] I would affirm the judgment and hold that the "uncommon" defense offered by Burbank fails pursuant to our decision in West , rendering it unnecessary to reach the expert qualifications issue.

The complaint against Burbank states that he was tested as having a blood alcohol level of .15 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath. Although the results of the test are not in the record, the record contains a video of Burbank taking an Intoxilyzer breath test after his arrest. Burbank's first proffered expert testified at a pretrial hearing that the test results showed a blood alcohol level of .31; Burbank accepts this measurement in his brief.

West was decided before the 1994 recodification of the Motor Vehicle Code, P.L. 1993, ch. 683 (effective Jan. 1, 1995), at a time when the OUI law was codified at 29 M.R.S.A. § 1312 (1978) ; the text of the then-applicable statute appears in the opinion. State v. West , 416 A.2d 5, 6 n.1 (Me. 1980).

The term "EBA" references excessive blood alcohol, the alternative in the OUI law that, if excessive blood alcohol content is proved, does not require proof of impairment to support a conviction. See 29-A M.R.S. § 2411(1-A)(A)(2) (2018) ("A person commits OUI if that person ... [o]perates a motor vehicle ... [w]hile having an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath.").