463 So.2d 1165 (1984)
The STATE of Florida, Appellant,
v.
Francisco RIZO, Appellee.
No. 83-1454.
District Court of Appeal of Florida, Third District.
November 20, 1984.
Rehearing Denied February 12, 1985.
Jim Smith, Atty. Gen., and Jack B. Ludin, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender, and Thomas G. Murray, Asst. Public Defender, for appellee.
Before HENDRY, BASKIN and FERGUSON, JJ.
BASKIN, Judge.
The state appeals the trial court's order suppressing a photograph of Francisco Rizo taken at the police station and utilized in a subsequent photo line-up in which he was named by the victim as one of the persons who committed a robbery. Agreeing with the trial court that the photograph was the inadmissible product of an unlawful stop and an illegal detention, we affirm.
The relevant facts are set forth in the trial court's order:
Ms. Caranza (the "Victim") was robbed by two latin males who left the scene of the robbery in a two-tone late model automobile. She and her sister (who did not witness the robbery, but observed the car departing from the parking lot of the victim's place of business) gave the *1166 police descriptions. The defendant fits the description of one of the robbers, but so do many people in Dade County.
Some time later, a person not previously known to the police appeared at the police station. He advised a detective that he had heard Mario Lara (later a co-defendant) admit that Lara had robbed the "old lady", and that the other robber was the defendant. Based upon facts then known to the police officer, the robbery Lara was describing to the informant was the robbery of the victim. The informant (who has been alternately characterized as a confidential informant or a citizen informant) also advised the officer where the two-tone car was parked, a place which was allegedly the residence of Mario Lara.[1] He also gave a general area as the location of the defendant's residence.
Investigation of the location disclosed by the informant revealed what appeared to be the car. While the car was under surveillance by the police, it was driven away by Mario Lara and his brother. The police followed; the car ran a stop sign, and was stopped by the police at a location which was approximately where the informant advised the police the residence of the defendant was located. A crowd gathered (including other police officers), and one of the officers noticed that a member of the crowd fit the description of the defendant given by the informant and the victim.[2]
Exactly what occured [sic] next is blurry, because all conversation between the police and the defendant at the scene of the stop were conducted in the spanish [sic] language, and the officer who had the conversation did not testify at the suppression hearing. We do know that the defendant accompanied two police officers to the police station where his photograph was taken. Whether this trip was consensual, or whether the defendant was in custody, is not certain. The officer who requested the spanish-speaking [sic] officer to speak to the defendant told the spanish-speaking [sic] officer not to tell the defendant that he was a suspect. It also seems clear that the defendant was never free to leave the station-house.
In any event, after spending some time at the station-house, a photograph of the defendant was taken, and made part of a photo-lineup. The line-up was shown to the victim, and she selected the defendant as one of the persons who robbed her. The photograph is the subject matter of the motion to suppress.
[1] The description of the car given by various persons was not the same; it was described as a tow-tone [sic] Pontiac or Olds, new car or several years old, and having a temporary or a permenent [sic] tag.
[2] This was not the officer to whom the informant spoke.
The trial court concluded:
Based upon all evidence submitted, it is not possible to determine whether the defendant went to the station-house voluntarily or in custody. It is most likely that he was in custody, or was enticed to go under a ruse. The officer who spoke to him did not testify, but we do know that officer was instructed not to advise the defendant that he was a suspect in a robbery.[3] We also know that the defendant was never free to leave the station-house.
Whether the photograph of the defendant was taken as the result of an arrest, or some lesser form of detention such as an investigatory stop at the scene or a permissable [sic] station-house investigation; whether the time that the defendant spent at the police station was too long or not; whether the test is probable cause or founded suspicion or some other; all trails lead to the credibility or reliability of the informant. At the time the defendant appeared at the traffic stop, there was not the slightest reason for the police to have any contact with him other than the suspicion of an officer that the defendant met the description provided by the informant.
.....
The informant was unknown to the police officer to whom he spoke. While *1167 it might be successfully argued that the information that he gave regarding Lara was reliable, the information concerning the defendant, which was not observed by the informant, but came supposedly from Lara, whose reliability at that time was totally unknown, does not meet the test of reliability. All the police had to go on is what some unknown person told them one thief said about a second thief. Under the circumstances of this case, I do not believe the police had a reason to take the photograph of the second thief, unless he voluntarily went to the station-house. There is no evidence that he did so, United States v. Crews, 445 U.S. 461, 100 S.Ct. 1244.
[3] The defendant claims that if the defendant was in fact arrested at the scene the actual arrest took place in his home without a warrant, and therefore the photograph should be suppressed as the fruit of an illegal Payton arrest, Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Aside from the confusion as to where the arrest took place, there is no evidence that the house in which the arrest took place (if in fact it took place in a house) was the home of the defendant.
A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness; the reviewing court must interpret the evidence and the reasonable inferences derived from it in a light most favorable to the trial court. Smith v. State, 378 So.2d 281 (Fla. 1979); Finney v. State, 420 So.2d 639 (Fla. 3d DCA 1982); Barrios v. State, 397 So.2d 440 (Fla. 3d DCA 1981).
We find that the record provides substantial support for the trial court's conclusion that the tenuous information received by the police from an informant of dubious credibility failed to satisfy fourth amendment standards. We agree with the trial court's conclusion that based on the totality of the circumstances, the information furnished the police did not give rise to reasonable suspicion sufficient to justify their stopping Rizo. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Gorney v. State, 409 So.2d 220 (Fla. 4th DCA 1982); Robinson v. State, 388 So.2d 286 (Fla. 1st DCA 1980); Parker v. State, 363 So.2d 383 (Fla. 3d DCA 1978); Whitley v. State, 349 So.2d 840 (Fla. 2d DCA 1977). See State v. Webb, 398 So.2d 820 (Fla. 1981). Cf. Finney (information given to police by victim directly following crime constituted reasonable, articulable suspicion justifying police officer's initial automobile stop of defendant). Because the stop was unlawful, evidence obtained from further police activity is also inadmissible. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Lewis v. State, 382 So.2d 1249 (Fla. 5th DCA 1980); Whitley.
The custodial interrogation conducted at the police station without probable cause to arrest is also violative of fourth amendment guarantees. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Even if the initial stop could be construed as valid, we believe the police exceeded the bounds of any authorized temporary detention when they transported Rizo to the police station to conduct a custodial interrogation without probable cause. Royer. Thus, the photo obtained during the unlawful detention is inadmissible on that ground, Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); see Terrell v. State, 429 So.2d 778 (Fla. 3d DCA 1983); J.R.H. v. State, 428 So.2d 786 (Fla. 2d DCA 1983); Pirri v. State, 428 So.2d 285 (Fla. 4th DCA), review denied, 438 So.2d 834 (Fla. 1983), without consideration of the taint arising from the initial unlawful stop. Wong Sun; Lewis.
Holding that the state failed to meet its burden of establishing the constitutional validity of the warrantless search, Raffield v. State, 351 So.2d 945 (Fla. 1977); Morales v. State, 407 So.2d 321 (Fla. 3d DCA 1981), we affirm.
Affirmed.