600 So.2d 1280 (1992)
The STATE of Florida, Appellant,
v.
V.C. and R.S., juveniles, Appellees.
Nos. 91-1290, 91-1365.
District Court of Appeal of Florida, Third District.
June 23, 1992.
Robert A. Butterworth, Atty. Gen., and Jorge Espinosa and Richard Fechter, Asst. Attys. Gen., for appellant.
Bennett H. Brummer, Public Defender, and N. Joseph Durant, Jr., Asst. Public Defender, for appellees.
Before BASKIN, JORGENSON and GODERICH, JJ.
JORGENSON, Judge.
The State appeals from an order suppressing the oral and written statements of V.C. and R.S. For the reasons that follow, we reverse.
A student at North Miami High School identified V.C. and R.S., also students, as two individuals who had robbed him. The victim reported the incident to Hindman, *1281 the assistant principal, on a Friday afternoon. Hindman telephoned the police that afternoon and informed them of the alleged robbery. The following Monday, Hindman asked V.C. to leave class and questioned him in the hallway. V.C. admitted his involvement in the incident. Hindman then told V.C. that a police investigation was possible and took V.C. to the office, where V.C. wrote out a statement describing the incident. The same morning, R.S. had gone to the school's administrative office to obtain a pass for a previous absence. Hindman saw R.S. in the office and asked to see him. Hindman took R.S. into an empty office, questioned him about the alleged robbery, and warned him that the police could get involved in the matter. R.S. told Hindman about his involvement in the incident and gave a written statement. Neither V.C. nor R.S. ever indicated that they did not want to give the statements. Hindman did not actually know whether a criminal investigation was to take place, but only knew that a police report had been filed.
When V.C. and R.S. were arrested, Hindman gave their statements to the police. In the delinquency proceedings, V.C. and R.S. moved to suppress those statements on the grounds that they were not freely and voluntarily given and were obtained by virtue of an illegal detention. The trial court, following an evidentiary hearing, suppressed all oral and written statements given by V.C. and R.S., finding that those statements were given in a "`police-like' atmosphere, where the Assistant Principal worked almost as an agent for the police... ." The court ruled that "it was incumbent upon school authorities" to safeguard the students' Fifth Amendment privileges.[1]
The record does not support the trial court's findings that the statements were coerced. V.C. testified that he willingly gave his statement. R.S. presented no testimony but, according to Hindman, indicated no reluctance to give an oral or written statement. The United States Supreme Court has held that the legality of a school principal's search of a student depends on the reasonableness of that search in light of the surrounding circumstances. New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The same principle of reasonableness should apply to the Fifth Amendment claims that were raised in this case. The record does not support the trial court's conclusion that the assistant principal's actions were unreasonable. There is no evidence that the assistant principal was overbearing or did anything to extract the students' confessions that was incompatible with our constitutional principles.
There is likewise no evidence in the record to support the trial court's finding that the students were in custody when they were questioned. Although they were not free to leave, that restriction stemmed from their status as students and not from their status as suspects. Cf. Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (probationer's obligation to appear before probation officer did not convert otherwise voluntary statements into coerced statements).
Finally, there is no evidentiary support for the trial court's finding that Hindman acted as an agent for the police. Hindman testified that, as an assistant principal, he had to deal with students' disciplinary problems and that the investigations he conducted within the school often yielded information that he would eventually turn over to the police. However, his primary function when dealing with disciplinary problems was to act as a fact-finder for the school system. Hindman's testimony reveals that he was acting to further the interests of the school, not the police. Because there is no evidence in the record that Hindman was acting as an agent for the police, the trial court erred in *1282 suppressing the statements. Cf. In re J.C., 591 So.2d 315 (Fla. 4th DCA 1991) (assistant principal's questioning of student in principal's office while sheriff's deputy present not custodial interrogation, as assistant principal was school official and not police official); W.B. v. State, 356 So.2d 884 (Fla. 3d DCA 1978) (assistant principal who took statement of juvenile was acting as school official and not agent of police when juvenile confessed to him; Miranda warnings not required); compare F.P. v. State, 528 So.2d 1253 (Fla. 1st DCA 1988) ("school official exception" to probable cause requirement for warrantless search not applicable where search carried out at behest of police by School Resource Officer who was employee of Sheriff's department and had dual role of school official and law enforcement officer), and State v. M.A.L., 765 P.2d 787 (Okla. Crim. App. 1988) (assistant principal acted as state officer and not merely as school investigatory official when he questioned student in presence of police and had himself called police).
Accordingly, we reverse the order of suppression and remand for further proceedings consistent with this opinion.
GODERICH, J., concurs.
BASKIN, Judge (dissenting).
I am unable to agree with the majority's conclusion that the trial court erred in granting the juveniles' motions to suppress their statements.
It is well settled that "[t]he ruling of the trial court on a motion to suppress comes to us clothed with a presumption of correctness and we must interpret the evidence and reasonable inference[s] and deductions in a manner most favorable to sustaining the trial court's ruling." Owen v. State, 560 So.2d 207, 211 (Fla.), certiorari denied, ___ U.S. ___, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990); Rigol v. State, 561 So.2d 1308, 1309 (Fla. 3d DCA 1990); State v. Rizo, 463 So.2d 1165, 1167 (Fla. 3d DCA 1984). Furthermore, "a reviewing court should not substitute its judgment for that of the trial court[,]" Rigol v. State, 561 So.2d 1308, 1309 (Fla. 3d DCA 1990), but "must interpret the evidence and the reasonable inferences derived from it in a light most favorable to the trial court." State v. Rizo, 463 So.2d 1165, 1167 (Fla. 3d DCA 1984). Contrary to the majority's conclusion, the evidence amply supports the trial court's order.[1] Because the state has not overcome the presumption of correctness, I would affirm the order.
Several circumstances support the trial court's conclusion that the statements were *1283 involuntary. The majority holds that the statements elicited from the juveniles were not coerced, finding that there "is no evidence that the assistant principal was overbearing or did anything to extract the students' confessions that was incompatible with our constitutional principles." Maj. op. at 1281. The record contradicts this conclusion. The trial court specifically noted that the assistant principal was a "forceful and imposing, `police-like' individual." Testimony discloses that the assistant principal had a forceful demeanor. Mr. Hindman testified that he had experience in dealing with school disciplinary problems and did so frequently. Other statements support the trial court's finding that his attitude was that of an investigator or "police-like" authority figure. Because this court does not have the trial court's advantage of observing the witnesses, it should not substitute its views for the trial court's conclusion. Rigol v. State, 561 So.2d at 1308.
Next, the majority finds that the juveniles were not in custody. Although the majority acknowledges that the juveniles were not free to leave, it presumes that this restriction was based on their status as students. Despite the fact that the juveniles may not have been at liberty to leave school premises, their status as students should not have eradicated their right to oppose the demand for their confessions. The trial court concluded that they were given no option other than to remain in the small rooms and write their confessions. These circumstances support the court's conclusion that defendants V.C. and R.S. were detained and that their confessions were involuntary. See In re J.C., 591 So.2d 315 (Fla. 4th DCA 1991) (student had been detained during the pendency of the questioning by assistant principal).
The fact that the juveniles were not recalcitrant in complying with the assistant principal's instructions does not, by itself, render their confessions voluntary, especially when such reprisals as suspension would have resulted from their refusal to accede to the assistant principal's requests.
Furthermore, substantial competent record evidence supports the trial court's determination that the assistant principal acted, in the case before us, as an agent for the police. In W.B. v. State, 356 So.2d 884 (Fla. 3d DCA 1978), this court concluded that an assistant principal who merely questioned a student regarding a theft was carrying out the investigative duties associated with his position and not acting as a police agent. Here, however, Mr. Hindman's conduct is unlike the assistant principal's conduct in W.B. As the trial court notes in its order, the assistant principal personally notified the police of the offense at the behest of the victim's parent. The assistant principal testified that this was not his usual practice; he never reported an offense to the police unless it was an *1284 offense such as vandalism of school property. He was fully aware that the victim's parent was a police officer, and mentioned this fact to the students as he questioned them. The trial court concluded that the assistant principal suspected that police involvement was imminent. V.C. testified that he understood from Mr. Hindman's representations that "the police were on their way, and then  well, might probably make arrests."
During his testimony, the assistant principal stated that it was his practice to provide the police with the students' written statements without hesitation whenever they were requested. He testified that he knew that these students' statements could be turned over to the police and that he would do so freely. That is precisely what transpired within an hour of the completion of the statements. The students were arrested at the school, and the statements were made available to the police officers. These circumstances sustain the trial court's determination that Mr. Hindman served as a police agent.
When a court determines the voluntariness of a juvenile's confession to a police officer, it must consider the totality of the circumstances under which the confession was made. Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); W.M. v. State, 585 So.2d 979 (Fla. 4th DCA 1991); State v. Charon, 482 So.2d 392 (Fla. 3d DCA 1985); T.B. v. State, 306 So.2d 183 (Fla. 2d DCA 1975). If we apply the reasonableness standard adopted by the United States Supreme Court in New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), to determine the constitutionality of searches of students by public school officials,[2] we are compelled to affirm the suppression of these confessions.
"Determining the reasonableness of any search involves a twofold inquiry: first, one must consider `whether the ... action was justified at its inception[;]' second, one must determine whether the search as actually conducted `was reasonably related in scope to the circumstances which justified the interference in the first place[.]'" New Jersey v. T.L.O., 469 U.S. at 341, 105 S.Ct. at 742-743, 83 L.Ed.2d at 734 (citations omitted). Assuming, without deciding, that the assistant principal's investigation of the offense here was "justified at its inception[,]" T.L.O., 469 U.S. at 341, 105 S.Ct. at 742-743, 83 L.Ed.2d at 734, the scope of the investigation exceeded that which is "reasonably related ... to the circumstances which justify the interference in the first place." T.L.O., 469 U.S. at 341, 105 S.Ct. at 742-743, 83 L.Ed.2d at 734.
The conduct that produced the confessions fails the second inquiry of the reasonableness standard. V.C. and R.S. were confronted by a school official in charge of school discipline. They were segregated in small rooms, and told to write statements. They were not given a choice, they were not politely requested to memorialize in writing their prior oral statements; the assistant principal produced a form, and insisted that the students write of their involvement in the incident. Even the student who expressed reluctance was told to comply. The sequestration of the juveniles and the requirement of a written statement was not reasonably related to the investigation of the offense.
The purpose of the reasonableness standard is to "ensure that the interests of the students will be invaded no more than necessary to achieve the legitimate end of preserving order in the school." T.L.O., *1285 469 U.S. at 343, 105 S.Ct. at 743, 83 L.Ed.2d at 736. The facts before us demonstrate that the school official's actions violated this safeguard. The preservation of order in the school did not require that students furnish written confessions to be turned over to the police.
I would hold that the trial court's decision to suppress the statements comported with constitutional principles and should be affirmed.
NOTES
[1] The respondents had originally argued that they should have been given Miranda warnings before giving their statements. That argument has been abandoned.
[1] The Order to Suppress Statements provides:

The evidence presented during the motion hearing revealed that the robbery occurred on a Friday in December, 1990. Late that afternoon, Mr. Hindman, the Assistant Principal in charge of discipline, met with the parent of the victim and the victim. Mr. Hindman himself contacted the police, at the parent's request. This is an important departure from what seems to have been the usual procedure, i.e. the Assistant Principal cooperates in the normal case by doing his own, separate investigation, and then turns over his reports or statements at some subsequent date at the request of the police.
Having initiated the police investigation of a serious felony, and with the additional information that the victim's parent was a police officer, the Assistant Principal, at the first opportunity on the following Monday morning, pulled all four suspects from their classes. He questioned each boy, elicited some oral statements, and then placed each boy in a room and ordered him to write a statement. No student was free to leave, at any time. One attempted several times to leave and refused to give a statement and was basically told he could not leave. Within an hour after completion of the statements, all written statements were turned over to police.
At no time was a student informed that he need not make a statement. Indeed, the testimony reflects the exact opposite. No procedural safeguards were used by school authorities. No parent was called prior to obtaining the statement. Indeed, the "parental authority", i.e. the school, was also, in this case, the prosecuting and investigative authority. Since the Assistant Principal also commenced the police investigation, it is reasonable to assume his cooperation, knowledge of it, and his quasi-police role from the outset. Also, one Respondent testified that the Assistant Principal mentioned several times, as a threat, that the victim was a police officer's son. Mr. Hindman did not' disclose the ongoing police investigation nor even that the Respondents were suspects.
Based upon the foregoing circumstances, as well as a careful consideration of the totality of the circumstances, as well as the credibility and demeanor of the witnesses, (Mr. Hindman is an especially forceful and imposing, `police-like' individual) the Court finds that the oral and written statements were not given voluntarily, but were coerced from each Respondent. The Assistant Principal used the full power of his authority and command. The Respondents were given no choice. The [Assistant Principal] planned to turn these statements over to police and, this court believes, his `suspension investigation' was secondary to his intent to act as agent for the police.
.....
This investigation was commenced by the Assistant Principal with full knowledge that the police were involved from the outset and, based upon his usual duties and frequent contact with police, with considerable knowledge of the probable outcome. It was therefore incumbent upon school authorities in this case and with its unique facts to insure some safeguards of the Respondents' Fifth Amendment privilege.
Given the `police-like' atmosphere, where the Assistant Principal worked almost as an agent for the police, the restraint on their freedom, the lack of choice or any procedural safeguards in taking these statements and, in at least one of the Respondents' case, the lack of previous contacts with either the police or the school disciplinary procedures, the Court finds the State has failed to meet the burden of proof by a preponderance of the evidence that the students gave their oral and written statements voluntarily. (Citations omitted).
[2] The United States Supreme Court concluded that

the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.
New Jersey v. T.L.O., 469 U.S. at 341, 105 S.Ct. at 742-743, 83 L.Ed.2d at 734 (citations omitted) (emphasis supplied).