377 So.2d 17 (1979)
Daniel BAKER, a/K/a Danny Herbert Baker, Appellant,
v.
STATE of Florida, Appellee.
No. 52676.
Supreme Court of Florida.
November 15, 1979.
Janice G. Scott and John D.C. Newton, II, Asst. Public Defenders, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Charles A. Stampelos, Asst. Atty. Gen., Tallahassee, for appellee.
SUNDBERG, Justice.
This is a direct appeal from an order of the Circuit Court for Duval County upholding the constitutionality of section 860.01(2), Florida Statutes (1977), commonly referred to as the "DWI manslaughter statute." Our jurisdiction is based on article V, section 3(b)(1), Florida Constitution.
On June 17, 1977, appellant, Daniel Baker, was traveling north on San Jose Boulevard in Duval County. Baker approached another vehicle which was also traveling north at a speed of forty-five miles per hour. In an attempt to pass the other vehicle, Baker entered the southbound lane which served as the passing lane for northbound traffic. As Baker began to pass, Judson David Bowden rode into the southbound lane in an attempt to cross the highway on a bicycle. Baker saw Bowden, applied his brakes, and skidded approximately ninety-one feet before striking Bowden, who died from the resulting injuries. Baker was given a blood alcohol test which revealed a 0.17 alcohol content. He was arrested and charged with manslaughter under section 860.01(2), Florida Statutes (1977), and with possession of less than five grams of marijuana. The former charge is the subject of this appeal.
Baker moved to dismiss the charge of manslaughter, arguing that section 860.01(2) is unconstitutional because it does not require a causal connection between the intoxication and the resulting death. Following the trial court's denial of his motion, Baker entered a plea of nolo contendere, specifically reserving the right to raise the issue on appeal. For the reasons hereinafter expressed we hold the statute to be constitutional.
Section 860.01, Florida Statutes (1977), provides:

*18 Driving automobile while intoxicated; punishment. 
(1) It is unlawful for any person, while in an intoxicated condition or under the influence of intoxicating liquor, model glue, as defined in s. 877.11, or any substance controlled under chapter 893 to such extent as to deprive him of full possession of his normal faculties, to drive or operate over the highways, streets, or thoroughfares of Florida any automobile, truck, motorcycle, or other vehicle. Any person convicted of a violation of this section shall be punished as provided in s. 316.193.
(2) If, however, damage to property or person of another, other than damage resulting in death of any person, is done by said intoxicated person under the influence of intoxicating liquor to such extent as to deprive him of full possession of his normal faculties, by reason of the operation of any of said vehicles mentioned herein, he shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083, and if the death of any human being be caused by the operation of a motor vehicle by any person while intoxicated, such person shall be deemed guilty of manslaughter, and on conviction be punished as provided by existing law relating to manslaughter.
Direct proof of the following elements is required for a conviction of manslaughter under subsection (2) of this statute: (1) a death occurred; (2) the death resulted from the operation of a vehicle by the defendant; and (3) the defendant was intoxicated at the time he operated the vehicle. Roddenberry v. State, 152 Fla. 197, 11 So.2d 582 (1942); Cannon v. State, 91 Fla. 214, 107 So. 360 (1926).
Appellant concedes that neither specific intent nor causal connection between the act and the death is an element of the crime described by section 860.01. This he must concede in view of a considerable line of cases construing the statute. Roddenberry v. State, Tootle v. State, 98 Fla. 469, 130 So. 912 (1930); Cannon v. State; Hanemann v. State, 221 So.2d 228 (Fla. 1st DCA 1969); Lemming v. State, 159 So.2d 486 (Fla. 2d DCA 1964). The most apt description of the offense is set forth in Roddenberry:
It is the appellant's assertion that the instructions given by the court did not include all of the elements of the offense alleged in the information "because they permitted the jury to convict * * * without proof beyond a reasonable doubt that he was driving carelessly * * * and permitted the jury to convict although they might believe that the death was caused wholly by the negligence of the deceased."
The primary offense denounced by the statute is the operation of an automobile by an intoxicated person and there are different degrees of punishment which may be meted out to the defendant dependent on the injury resulting to person or property. The most severe is the one which may be imposed where death results but there is no burden upon the state to prove that at the time of the incident the defendant was negligent. That element is established if it be shown that he was not, at the time, in possession of his faculties due to the voluntary use of intoxicants.
In view of what was written by the court in Cannon v. State, 91 Fla. 214, 107 So. 360, the negligence occurred at the time the driver, drunken to the extent named in the statute, entered the vehicle and proceeded to operate it and that negligence attached at the time the collision occurred, resulting in the death for which the defendant was placed on trial. It was not necessary to show that there was additional negligence when the collision occurred and no error was committed on the part of the court when he referred in his charges to a "collision" and did not place upon the state the burden of establishing beyond a reasonable doubt that there was some further wrongdoing on the part of the defendant before conviction would be warranted. The provision of the statute with reference to the death of a person being "caused" by the operation of the car is the equivalent of stating *19 that death resulted from his misconduct which had its inception at the time he took control of the car and proceeded to operate it while not in possession of his faculties.
11 So.2d at 584-85.
It is this very absence of the requirement of some nexus between the intoxication of the defendant and the death of the victim which causes the statute to be unconstitutional on due process grounds, contends the appellant. He quite properly points out that (i) other jurisdictions have interpreted similar statutes to require proof of causation, Broxton v. State, 27 Ala.App. 298, 171 So. 390 (1936); Williams v. State, 161 Miss. 406, 137 So. 106 (1931); State v. Darchuck, 117 Mont. 15, 156 P.2d 173 (1945); Williams v. State, 97 Okla. Cr. 229, 263 P.2d 527 (1953), and that (ii) proximate causation is an element of proof for a manslaughter conviction based on culpable negligence under section 782.07, Florida Statutes (1977). Thompson v. State, 108 Fla. 370, 146 So. 201 (1933); Tegethoff v. State, 220 So.2d 399 (Fla. 4th DCA 1969); Karl v. State, 144 So.2d 869 (Fla. 3d DCA 1962). He concludes, therefore, that to permit a manslaughter conviction under section 860.01 without proof of causation is a denial of substantive due process protected by both the United States and Florida Constitutions.
But to say it does not make it so. Statutes which impose strict criminal liability, although not favored, are nonetheless constitutional, particularly when the conduct from which the liability flows involves culpability or constitutes malum in se as opposed to malum prohibitum. Two classic examples of such legislation are statutes which impose severe criminal sanctions where a homicide occurs during the commission of a felony and where one has intercourse with a female under a prescribed statutory age. In the case of felony murder, there need be no showing of causation or active participation by the defendant in the homicide so long as he is proven to have been a participant in the felony out of which the homicide occurred. In the instance of statutory rape it is no defense that the defendant actually believed the female to be in excess of the prohibited age. Regina v. Prince, 13 Cox Crim.Cas. 138 (1875), early on settled the validity of statutory rape legislation. As recently as 1978 the United States Supreme Court conceded the constitutional authority of the several states to enact felony murder statutes. Lockett v. Ohio, 438 U.S. 586, 602, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
That the legislature intended section 860.01(2) to have strict liability consequences is beyond peradventure. Cannon v. State was decided by this Court in 1926. Decisions of this Court and of the district courts of appeal since that date have consistently held that negligence and proximate causation are not elements of the crime described in section 860.01(2). The legislature's reluctance to revisit the statute, in spite of ample opportunity, leads to the conclusion that the judicial construction of section 860.01(2) accurately reflects legislative intent.
In section 860.01(2) a rational response to a real problem? We must respond that (i) the problem of drunken drivers operating motor vehicles on the highways of this state is pernicious and real, and (ii) the response embodied in section 860.01(2) can be justified on deterrence grounds. Both are supported by our recent decision in Ingram v. Pettit, 340 So.2d 922 (Fla. 1976), where, in the context of a civil action for punitive damages, the statistics regarding fatalities resulting from accidents where drinking was a contributing factor are recited, and the public policy of punishment of drunk drivers as a deterrent is recognized.
Although the majority of legal scholars adjure strict criminal liability on the grounds that it is indefensible to impose criminal sanctions in the absence of mens rea and that such liability is not an effective deterrent,[1] there are those who make a *20 respectable argument for the rationality of strict criminal liability.[2] Furthermore, section 860.01(2) is not the classic strict liability statute criticized by the commentators. Even in the parlance of the ALI Model Penal Code, which is very critical of strict criminal liability, the act of operating a motor vehicle while intoxicated involves culpability.[3] We are not here dealing with the type of statute which imposes strict criminal liability for mere negligence or an act malum prohibitum.[4]
Given, then, that the operation of a motor vehicle while intoxicated is a reckless (and therefore culpable) act, is it rational for the legislature to impose criminal sanctions for any death which occurs without regard to the tort law concept of proximate causation between operation of the automobile and the death? If the legislature can reasonably conclude that such a measure operates as a deterrent to those who create a recognized and serious social problem, then certainly it is. Although, as noted, legal scholars have questioned the efficacy of the deterrent effect of strict liability statutes, an argument can be made that the presence of strict liability sanctions for a particular activity has the effect not only of inducing persons to engage in that activity with greater caution, but may also have the effect of keeping a relatively large class of persons from engaging in the conduct at all. This thesis cannot be proved empirically, but neither can the position of the opponents of strict criminal liability. Consequently, it cannot be asserted that the legislature has acted irrationally in enacting section 860.01(2) where it is just as plausible as not that it does have the desired deterrent effect. The Supreme Court of Tennessee has reached essentially the same conclusion by a slightly different analysis. Keller v. State, 155 Tenn. 633, 299 S.W. 803 (1927).
Accordingly, we hold that neither negligence nor proximate causation is an element of the crime embodied in section 860.01(2), Florida Statutes (1977), and the failure to include them as elements of proof does not deprive appellant of due process of law. The order and judgment of the Circuit Court of Duval County are affirmed.
It is so ordered.
ENGLAND, C.J., and ADKINS, OVERTON and ALDERMAN, JJ., concur.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
The DWI manslaughter statute, as construed by the majority, provides that if a person operates a motor vehicle while intoxicated, and the motor vehicle is involved in a collision resulting in the death of another, even if there is no causal connection between the intoxication and the collision, and even if the defendant's actual operation of the vehicle is in no way faulty, he is nevertheless guilty of manslaughter and can be imprisoned for up to fifteen years. I do not agree that this construction is correct.
The statutory language "caused by the operation of a motor vehicle by any person while intoxicated" should be construed to require for conviction a causal connection between the intoxication and the death. § 860.01, Fla. Stat. (1977). That is, the intoxication, by impairing the driver's faculties, must have caused his operation of the vehicle to be faulty with the result that a death occurred. The majority declines to give the statute such a construction and thereby renders it unconstitutional.
The majority states that there is "a considerable line of cases construing the statute" which hold that there is no requirement of a causal connection between the intoxication and the death. A careful reading of Tootle v. State, 98 Fla. 469, 130 So. 912 (1930) and Cannon v. State, 91 Fla. 214, *21 107 So. 360 (1926), reveals that they do not support this proposition. The cases do not construe the statute so as to dispense with causation.
In Roddenberry v. State, 152 Fla. 197, 11 So.2d 582 (1942), the Court said that there is no burden on the state to prove that at the time of the collision the defendant was negligent. Citing to Cannon v. State, 91 Fla. 214, 107 So. 360 (1926), for the traditional definition of culpable negligence, the Court said that the negligence occurs when the drunk driver enters the vehicle and proceeds to operate it. Then the Court said:
The provision of the statute with reference to the death of a person being "caused" by the operation of the car is the equivalent of stating that death resulted from his misconduct which had its inception at the time he took control of the car and proceeded to operate it while not in possession of his faculties.
Roddenberry v. State, 152 Fla. at 202, 11 So.2d at 585. This construction of the statute did not say that there is no requirement of causation. It said, rather, that the statute establishes a presumption of causation. Such a statutory presumption violates due process because it cannot be said that the element of causation is more likely to exist than not when the fact of intoxication is established. MacMillan v. State, 358 So.2d 547 (Fla. 1978).
The opinion of the majority does not discuss the issue of the rationality of the presumption which Roddenberry says the statute establishes. Although it has not been done before, the Court today is apparently saying that the element of causation can be entirely dispensed with.
Proof of the crime of manslaughter has traditionally been held to require a showing of culpable negligence causing the victim's death. See, e.g., Filmon v. State, 336 So.2d 586 (Fla. 1976); Miller v. State, 75 So.2d 312 (Fla. 1954); Austin v. State, 101 Fla. 990, 132 So. 491 (1931); Peel v. State, 291 So.2d 226 (Fla. 1st DCA), cert. denied, 298 So.2d 164 (Fla. 1974). And it is said in defense of the DWI manslaughter statute that the defendant's conduct was culpably negligent when he got into an automobile while intoxicated and entered a public roadway. Of course, such conduct is more than negligent, it is criminal. § 860.01(1), Fla. Stat. (1977); Id. § 316.193(2)(a). The criminality of the conduct, however, does not justify what the DWI manslaughter statute does. It selects a few of those who engage in this reckless conduct and metes out to them a harsher punishment depending on circumstances in no way related to the offender's actual culpability.
Under this law as construed by the Court today, the following application is possible. An intoxicated person drives an automobile to an intersection and properly stops at a stop light. While there in a stationary position, the vehicle is struck from behind by another automobile due to negligent operation by the driver. The negligent driver dies from injuries received in the collision. The completely passive, nonnegligent but intoxicated motorist can be convicted of DWI manslaughter and imprisoned for fifteen years. Analytically, this scenario is the equivalent of the fact pattern of the instant case. As stated above, I do not believe the statute should be given this construction. As construed, the statute lacks a rational basis and denies due process of law.
The crime of driving under the influence of an intoxicating substance to such an extent as to deprive a person of full possession of his normal faculties is punishable by six months in jail or a $500 fine, or both. § 860.01(1), Fla. Stat. (1977); Id, § 316.193(2)(a). If damage to property or personal injury short of death is associated with such conduct, it is punishable by one year in jail or a fine of $1,000 or both. § 860.01(2), Fla. Stat. (1977); Id. §§ 775.082(4)(a), 775.083(1)(d). If one engages in such conduct and is involved in a collision from which the death of another results, he can be punished by fifteen years in prison or a $10,000 fine or both. § 860.01(2), Fla. Stat. (1977); Id. §§ 775.082(3)(c), 775.083(1)(b).
These provisions for meting out varying punishments depending on the degree of harm resulting from a collision, without *22 regard to causation and without regard to the actual faulty operation of the motor vehicle, are sought to be justified on the ground of the deterrent effect against drunken driving. To operate a motor vehicle in an intoxicated condition so that normal faculties are impaired is a serious violation of law and a threat to public safety. The way to deter such anti-social conduct is to impose severe penalties upon all those who are apprehended engaging in it. To reserve an especially harsh penalty for the relatively few offenders whose conduct happens to coincide with a collision causing death does not serve the purpose of deterrence, nor is it supported by any other rational basis.
Because of the lack of required causal connection between the intoxication and the death, the DWI manslaughter statute applies to conduct that is no more culpable than the conduct of one who drives while intoxicated to the point at which his faculties are impaired. The only thing that distinguishes the conduct is the existence of the noncausally-related death. Since the conduct of one who drives while intoxicated is of the same degree of culpability regardless of whether such a collision and death occur, the provision for a possible maximum sentence of fifteen years' imprisonment constitutes excessive punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. A punishment is excessive if it "makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or ... is grossly out of proportion to the severity of the crime." Coker v. Georgia, 433 U.S. 584, 592, 97 S.Ct. 2861, 2865, 53 L.Ed.2d 982 (1977); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
The real motivation behind this statute as construed appears to be not deterrence of drunken driving but rather a desire to inflict a particularly harsh penalty because a life has been lost in an accident where one of the parties involved was doing wrong by being intoxicated. This response to the situation presented does not comport with modern, enlightened concepts of criminal justice.
NOTES
[1] J. Hall, General Principles of Criminal Law 279-322 (1947); G. Williams, Criminal Law §§ 75-77 (2d ed. 1961); Hart, The Aims of the Criminal Law, 23 L. & Contemp. Prob. 401, 422-25 (1958); Sayre, Mens Rea, 45 Harv.L. Rev. 974 (1932); Stallybrass, The Eclipse of Mens Rea, 52 L.Q.Rev. 60 (1936).
[2] Wasserstrom, Strict Liability in the Criminal Law, 12 Stan.L.Rev. 731 (1960).
[3] ALI Model Penal Code § 2.02(c) (proposed official draft 1962).
[4] These statutes are catalogued and criticized in the commentary to ALI Model Code § 2.05 (tentative draft 4 1955).