378 So.2d 281 (1979)
Eddie Lee SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 53708.
Supreme Court of Florida.
December 20, 1979.
*282 Michael J. Minerva, Public Defender, and Randolph P. Murrell, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
SUNDBERG, Justice.
This case reaches us by direct appeal from the Circuit Court for Leon County. In denying appellant's motion to dismiss the information filed against him, the circuit court upheld the validity of the DWI manslaughter statute, section 860.01, Florida Statutes (1977),[1] thereby vesting this Court with jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
The evidence adduced at trial showed the following. In the late night hours of October 14, 1977, appellant Eddie Lee Smith and Fred Gavin decided to go to the Salt and Pepper Club. Appellant had already consumed about three shots of vodka and some beer earlier in the day. On the way to the club they stopped at the Dixie Oil Service Station for gas.
That same evening the deceased, Vicki Nettles and Donna Gibson, went to a Tallahassee bar. Around midnight the girls left the bar with several companions and drove to the Suwanee Swifty, a convenience store located one mile north of the accident scene. Apparently angered as a result of an argument with her friends, Vicki Nettles left the store on foot and headed south on the Woodville Highway. Donna Gibson followed quickly after Vicki. The pair were last seen alive at 2:30 a.m. just south of Cobb's Gun Shop, the approximate site of the accident.
An employee of the Dixie Oil Service Station testified that appellant drove into the gas station "at an unusually high rate of speed," brought his car to a stop just before hitting a sign in front of a parking space, rolled forward, and then hit the sign. He got out of the car and leaned over to look under it, but fell flat on his face. Appellant then bought some gas and drove away in a southerly direction at approximately 2:45 a.m.
Gerald Payne of the Tallahassee Police Department was the first police officer at the scene of the accident. He first observed appellant's car stalled in a ditch and turned in a northerly direction. Vicki Nettle's mortally wounded body lay near the side of the road. Officer Payne testified that appellant was intoxicated and appeared dazed and confused. It was apparent to him that appellant did not think he had hit anyone. Donna Gibson's body was found five to ten minutes after Officer Payne arrived at the scene.
Highway Patrolman Lee Kirkpatrick gave appellant a breathalyzer examination[2] and several physical coordination tests two hours after the accident. Appellant failed the physical coordination test, completely missing his nose with both his right and left *283 index fingers. The breathalyzer reading was .21.
On October 18, 1977, the state filed an information charging appellant with two counts of DWI manslaughter in violation of section 860.01, Florida Statutes (1977). On February 1, 1978, the jury convicted appellant on each count. He was later adjudicated guilty and sentenced to two concurrent fifteen-year terms.
Appellant presents a number of evidentiary issues which do not merit extended discussion. It suffices to say that after a careful review of the entire record, we find the evidence more than sufficient to support appellant's convictions, and no abuse of judicial discretion has been demonstrated. Astor v. Astor, 89 So.2d 645 (Fla. 1956). Similarly unavailing is appellant's constitutional assault upon section 860.01, the DWI manslaughter statute. In Baker v. State, 377 So.2d 17 (Fla. 1979), we recently upheld the constitutionality of section 860.01, notwithstanding its strict liability aspects.
Somewhat more troubling is appellant's assertion that the results of the breathalyzer examination should have been suppressed because the police improperly obtained his consent to the test. He maintains that he initially refused to take the test but relented after police advised him that he would be taken to Tallahassee Memorial Hospital and given a blood test if he refused to submit to the breathalyzer exam.
Section 322.261(1)(a), Florida Statutes (1977), commonly known as the "implied consent law," provides that a person accepting the privilege of driving a motor vehicle in this state shall be deemed to have given his consent to submit to an approved chemical test of the alcohol content of his blood if he is lawfully arrested for any offense committed while driving a motor vehicle under the influence of alcoholic beverages. The person's consent may be revoked,[3] however, and section 322.261 prohibits the taking of a blood sample from a person who expressly objects to the chemical test. State v. Riggins, 348 So.2d 1209 (Fla. 4th DCA 1977).[4] The issue, then, is whether appellant's consent to the breathalyzer test was freely and voluntarily given.
The ruling of a trial court on a motion to suppress is clothed with a presumption of correctness. As a reviewing court we must interpret the evidence and the reasonable inferences derived therefrom in a manner most favorable to the trial court. McNamara v. State, 357 So.2d 410 (Fla. 1978). Our inquiry in this case is confined to whether there was competent evidence to support the court's ruling that appellant freely consented to the breathalyzer test. Everett v. State, 353 So.2d 648 (Fla.3d DCA 1977); Gerrard v. State, 345 So.2d 849 (Fla.3d DCA 1977).
At the hearing on the motion to suppress, the testimony revealed that when appellant refused to take the test, Officer Fidler of the Florida Highway Patrol told him that "if he did not take a breathalyzer test that he would be transported [to] the Tallahassee Memorial Hospital and blood would be taken for a blood alcohol test," after which appellant consented to the test. Although Officer Fidler stated that he never told appellant that his blood would be taken forcibly, such an implication appears clear. The testimony at the hearing further revealed, however, that subsequent to his conversation with Officer Fidler, while en route to the breathalyzer machine and again immediately before taking the test, appellant was advised by Patrolman Kirkpatrick of his rights under section 322.261 and that he could withdraw his consent to *284 the test at any time. In light of this rebutted testimony, the trial court had ample evidence from which to conclude that appellant had been fully apprised of his rights and that his consent to the breathalyzer examination was voluntarily given.
Accordingly, appellant's convictions and sentences are affirmed.
It is so ordered.
ENGLAND, C.J., and ADKINS, OVERTON, ALDERMAN and McDONALD, JJ., concur.
BOYD, Justice, dissenting.
"I dissent for reasons I expressed in my dissenting opinion in Baker v. State, 377 So.2d 17 (Fla. 1979).
NOTES
[1] Driving automobile while intoxicated; punishment.
(1) It is unlawful for any person, while in an intoxicated condition or under the influence of intoxicating liquor, model glue, as defined in s. 877.11, or any substance controlled under chapter 893 to such extent as to deprive him of full possession of his normal faculties, to drive or operate over the highways, streets, or thoroughfares of Florida any automobile, truck, motorcycle, or other vehicle. Any person convicted of a violation of this section shall be punished as provided in s. 316.193.
(2) If, however, damage to property or person of another, other than damage resulting in death of any person, is done by said intoxicated person under the influence of intoxicating liquor to such extent as to deprive him of full possession of his normal faculties, by reason of the operation of any of said vehicles mentioned herein, he shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083, and if the death of any human being be caused by the operation of a motor vehicle by any person while intoxicated, such person shall be deemed guilty of manslaughter, and on conviction be punished as provided by existing law relating to manslaughter.
(3) Convictions under the provisions of this section shall not be a bar to any civil suit for damages against the person so convicted.
[2] The details surrounding the breathalyzer examination will be fully explored later in this opinion.
[3] Revocation of one's consent to submit to a chemical test will result in a suspension of the privilege to operate a motor vehicle for three months. § 322.261(d), Fla. Stat. (1977).
[4] Riggins correctly points out that a person's right to refuse a chemical test in Florida is a statutory rather than a constitutional right. Federal and Florida cases have concluded that the taking of a blood sample from an arrestee involved in an automobile accident who appears to be under the influence of alcohol is constitutional. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Filmon v. State, 336 So.2d 586 (Fla. 1976); State v. Mitchell, 245 So.2d 618 (Fla. 1971).