# STATE OF FLORIDA v THOMPSON, et al. (Consolidated)

## Case No. 89-26 AC (A) 02 (County Court Case No. 88-27523 TC A02)

Fifteenth Judicial Circuit

March 29, 1990

### APPEARANCES OF COUNSEL

**Robert Jaegers, Esquire,** Assistant State Attorney, for appellant.

**Margaret Good, Esquire,** for appellees, Thompson and Palacios.

**Nancy C. Wear, Esquire,** for appellee, Derby.

Before COHEN, CARLISLE, MILLER, JJ.

## OPINION OF THE COURT

COHEN, Judge.

These three cases involve appeals from the county court orders in each case suppressing evidence of appellees' respective breath test results. In each case the trial court found that there had not been substantial compliance with Department of Health and Rehabilitative Services Rules as required by Florida Statute 316.1932 and 316.1934.

We affirm.

The dissent reasons that there was, in fact, substantial compliance as required by the aforementioned Rules and Statutes. However, the trial court's ruling on a motion to suppress is clothed with a presumption of correctness. As the reviewing court we have interpreted the evidence and the reasonable inferences derived therefrom in the manner most favorable to the trial court. We have confirmed our inquiry to whether or not there was sufficient competence evidence in the record to support the lower courts' rulings concluding that there was not substantial compliance. Although we may have independently reached a different conclusion - as the dissent has done here - we do not believe that is the proper standard to be applied to this review. See *Smith v State,* 378 So.2d 281 (Fla. 1979).

We simply cannot say that the trial judges' view of the evidence in each case could not support the findings made and, accordingly, we have affirmed.

MILLER, J., concurs.

---

CARLISLE, J., dissent.

The issue in this case concerns the question of substantial compliance with the Florida Department of Health and Rehabilitative Services' (HRS) regulations concerning breathalyzers.

Palacios, appellee, took a breathalyzer test on October 8, 1988. Derby, also an appellee, took a test on October 11, 1988, on the same machine used to test Palacios. Appellee Thompson took his test on September 16, 1988. This particular breathalyzer machine had maintenance tests on September 9, 1988 and next on November 5, 1988. The machine was taken "off-line" on October 16, 1988 for repairs.

According to the testimony, the subject breathalyzer machine has a built-in timing system. When a breath sample is put into a chemical testing solution, the timing system automatically turns on one light to

indicate the 90-second time has started. After 90 seconds another light turns on to signal the time to take the measurement.

Ira Karmelin, a breathalyzer maintenance inspector who routinely tested the subject machine, testified that if the second timer light would come on before or after 90 seconds and the measurement was taken when the light lit, there is a possibility that the machine would not give an accurate reading.

Deputy Schoenstein used the subject machine on October 11, 1988, to test appellee Derby. She had no problems with the machine. She knew the machine was working properly because she followed the HRS checklist, balanced the machine and got two accurate readings.

According to a Mr. Majewski, the State HRS Inspector, if the HRS checklist is followed the operator knows the instrument is operating properly. All the meter does is show balance, and it is not very scientific. A proficient breathalyzer operator will take two breath tests, both within a .02 variation of one another. Furthermore, most of the chemical reaction of the breath test takes place within 75 seconds, so that a reading taken after 85 or 95 seconds will not affect the accuracy.

Deputy Barge used the subject machine on October 16, 1988. While he was waiting for the first light to come on indicating that the timer had started, he tapped the light. It came on and the time then started to run. He thought that there was a possible problem with the timing and balancing mechanisms, so he took the machine off-line to have it checked out.

Deputy Golson, a breathalyzer maintenance person, repaired the subject machine on November 15, 1988, after finding two problems. First, the electrical contacts that activate the lights and the 90-second timer (which controls the period of time the machine is allowed to test solutions) were not connecting because they were dirty. He cleaned the contacts to resolve this problem. Second, the balancing meter (which balances the calibration scale for measurements) would oscillate from changes in electrical current being supplied to the machine whenever the batmobile's air conditioner compressor kicked on or off. Golson resolved this problem by replacing the entire circuit board in the machine to stablize the voltage charges. The electronics for the 90-second timer are also on this board. The machine was subsequently inspected and certified by HRS before it was put back on-line.

The trial court granted Motions to Suppress and the State appealed.

In *Ridgeway v State,* 514 So.2d 419, it was held that in the absence of evidence of crucial significance of the period of delay, the failure to

timely inspect the machine did not constitute a substantial deviation from HRS rules which would warrant an invalidation of the test results.

HRS Rule 10D-42.024(1)(c) requires the machine to "be inspected at least once each calendar month . . . to insure . . . accuracy." The monthly inspection for October, 1988, did not take place because Deputy Barge observed a possible malfunction and took the machine off-line to have it checked. In November, 1988, the machine was inspected and repaired and placed back in service.

Had Deputy Barge been *less* observant and left the machine on-line it would have been inspected within the calendar month of October, 1988, and this issue would not be before us. The trial court, and the majority herein, suppressed the evidence of the two tests simply because when a malfunction was noted and the machine sent for repair, no inspection was performed.

Perhaps an analogy is in order. Aircraft are equipped with navigational devices, which must be checked for accuracy after every ten hours of use or every ten days. They must be accurate within plus or minus four degrees. If a malfunction is noted, the device must be repaired before it can be used again for navigational purposes.

If the device were in the shop being repaired there would be no requirement that the ten hour or ten day inspection be conducted. Further, there would be no reason to believe that the aircraft had failed to arrive safely at its destination at any time between the last inspection and the time the malfunction was noted. There is likewise no reason to believe the results obtained in these cases are inaccurate.

In short, Rule 10D-42 does not require a monthly inspection when the machine is in the shop. There is simply no non-compliance in this case.

I would reverse.