710 So.2d 110 (1998)
David CARTER, Appellant,
v.
STATE of Florida, Appellee.
No. 97-1012.
District Court of Appeal of Florida, Fourth District.
April 15, 1998.
*111 Richard L. Jorandby, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Maya Saxena, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, Judge.
The issue in this case, which is one of first impression in Florida, is whether a jury instruction on involuntary intoxication should ever be given in a DUI case. We conclude that under the facts of this case, in which there was evidence that the defendant unknowingly took the wrong medicine through the fault of another person, such an instruction should have been given. We therefore reverse for a new trial.
Defendant was arrested around 3:00 A.M. after a deputy observed him driving his car and stumbling after he stopped and got out. Defendant refused to take a breath alcohol test, but failed three roadside sobriety tests and admitted on video that he had had three drinks and smoked cannabis. He was charged with violating sections 316.193(1) and (2)(b), Florida Statutes (1995), convicted on those charges, and sentenced to 17.3 months in prison.
At his trial, defendant testified that he had only had one beer, but that he had been at the home of a friend who had given him what she told him were four ibuprofen tablets for pain that he had been complaining about. His friend testified that she had been prescribed Amitriptyline for depression, that she kept the Amitriptyline and ibuprofen tablets in the same container, and that she realized the next day that she had given the defendant the Amitriptyline by accident. The director of the DUI lab for the University of Miami testified that appellant's behavior was consistent with both intoxication due to alcohol and cannabis, and intoxication due to four Amitriptyline tablets.
Defendant requested a jury instruction on involuntary intoxication;[1] however, the trial judge agreed with the state that there is no intent element in the offense of DUI, that the statute thus imposes strict liability, and refused to give the instruction.
Involuntary intoxication has been recognized as a defense to negate intent under other circumstances. Brancaccio v. State, 698 So.2d 597 (Fla. 4th DCA); rev. denied, 705 So.2d 10 (Fla.1997)(instruction should have been given in first degree murder case where there was evidence that defendant's conduct resulted from a side effect of prescribed Zoloft); and Boswell v. State, 610 So.2d 670 (Fla. 4th DCA 1992)(instruction should have been given in shooting case where evidence showed defendant's conduct resulted from a reaction to prescribed Xanax and Prozac combined with cirrhosis of the liver).
When voluntary, as opposed to involuntary intoxication, is raised as a defense, its applicability often turns on whether the statute criminalizing the conduct requires specific intent. See, e.g., Frye v. State, 23 Fla. L. Weekly S123 (Fla. March 5, 1998). As the specially concurring and dissenting opinions in Frye demonstrate, the distinction between specific and general intent crimes is not an easy one. Where, however, the issue is whether a defendant without intent can be strictly liable for a crime, there is no confusion. Both federal and Florida law are clear that criminalization of conduct without fault is constitutionally limited to minor infractions such as parking violations or other regulatory offenses.
In Chicone v. State, 684 So.2d 736 (Fla. 1996) our supreme court was confronted with *112 the question of whether guilty knowledge was required for conviction of possession of cocaine, a third degree felony and possession of drug paraphernalia, a first degree misdemeanor. Justice Anstead's opinion, speaking for a unanimous court, contains a thorough analysis of why, under both federal and Florida law, intent or knowledge is a prerequisite whenever offenses carry substantial criminal sanctions, regardless of how criminal statutes are worded. The landmark federal decision in this area is Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), in which the Supreme Court described the types of minor offenses that people could be convicted of without intent or knowledge, and explained why this did not offend due process.
This has confronted the courts with a multitude of prosecutions, based on statutes or administrative regulations, for what have been aptly called `public welfare offenses.' These cases do not fit neatly into any of such accepted classifications of commonlaw offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. (emphasis added).
When Justice Blackmun was a circuit judge, he summarized the types of lack of intent crimes which would be constitutional under Morissette, as involving:
[b]asically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where the conviction does not gravely besmirch, where the statutory crime is not one taken over from the common law, and where congressional purpose is supporting, the statute can be construed as one not requiring criminal intent. The elimination of this element is then not violative of the due process clause.
Holdridge v. U.S., 282 F.2d 302, 310 (8th Cir.1960).
In Chicone the Florida Supreme Court, relying on the above emphasized language from Morissette, concluded that the felony and misdemeanor statutes involved in Chicone would be presumed to have "a scienter requirement in the absence of express contrary intent." Chicone, 684 So.2d at 742. The Chicone court also reiterated what Judge Wigginton stated in Frank v. State, 199 So.2d 117, 121 (Fla. 1st DCA 1967):
Scienter ... is not a mere technicality in the law, but a legal principle which must be observed in order to safeguard innocent persons from being made the victims of unlawful acts perpetrated by others, and of which they have no knowledge. It is a safeguard which must be preserved in the interest of justice so that the constitutional rights of our citizens may be preserved.
Chicone, 684 So.2d at 739.
Prior to Chicone, and more closely related to the subject at hand, drunk driving, the constitutionality of Florida's DUI manslaughter *113 statute was challenged in Baker v. State, 377 So.2d 17, 20 (Fla.1979), superseded by statute on other grounds as stated in Magaw v. State, 537 So.2d 564 (Fla.1989). The issue in that case was whether it was a denial of due process for a defendant to be convicted of DUI manslaughter even though there was no proximate causal relationship between the intoxication and the death. In explaining that due process did not require the state to prove a nexus between the defendant's intoxication and the death, the Florida Supreme Court first explained why the statute was not really a strict liability statute:
[T]he act of operating a motor vehicle while intoxicated involves culpability. We are not here dealing with the type of statute which imposes strict criminal liability for mere negligence or an act malum prohibitum.
Given, then, that the operation of a motor vehicle while intoxicated is a reckless (and therefore culpable) act, is it rational for the legislature to impose criminal sanctions for any death which occurs without regard to the tort law concept of proximate causation between operation of the automobile and the death? If the legislature can reasonably conclude that such a measure operates as a deterrent to those who create a recognized and serious social problem, then certainly it is. (footnotes omitted).
If the defendant in Baker had unknowingly ingested a drug which could have made him impaired, our supreme court could not have found the culpability or recklessness in drunk driving which it emphasized in Baker.
In Robertson v. State, 604 So.2d 783, 792 n. 14 (Fla.1992), the Florida Supreme Court observed that if a DUI defendant's blood alcohol level is .10 or higher, the statute provides a "strict-liability theory," because impairment need not be proven. The fact that involuntary intoxication is available as a defense, however, is not inconsistent with the fact that a .10 reading means that there is impairment. The involuntary intoxication defense acknowledges impairment, but is directed to the cause of the impairment. The availability of the defense will not, accordingly, change the proof needed by the state to establish a prima facie case of DUI by blood alcohol level or other evidence.
We therefore conclude that where, as here, there is evidence that (1) the defendant unknowingly ingested a substance which caused him to become impaired and (2) drove without the knowledge that he was or would become impaired while driving, an instruction on involuntary intoxication should be given.[2] We have considered the state's argument that the failure to give the instruction was harmless in light of what the defendant did at the time of his arrest; however, this error has constitutional due process implications, and under State v. DiGuilio, 491 So.2d 1129 (Fla.1986), it is not harmless.
Reversed and remanded for a new trial.
GROSS, J., and BROWNELL, SCOTT M., Associate Judge, concur.
NOTES
[1] The instruction requested by defendant was substantially correct, and was, with some slight changes, as follows:

A defense asserted in this case is that of involuntary intoxication. If you find that the defendant was driving a motor vehicle to the extent that his normal faculties were impaired, you must then consider the issue of whether the defendant unknowingly ingested a substance which caused him to become impaired. If you find that the defendant unknowingly ingested a substance which caused him to become impaired, and that he drove a motor vehicle without the knowledge that he would become impaired while driving due the consumption of such a substance, then you should find the defendant not guilty of DUI.
[2] At least three other states agree with our conclusion that due process requires that involuntary intoxication is available as a defense in DUI cases. City of Minneapolis v. Altimus, 306 Minn. 462, 238 N.W.2d 851 (1976); People v. Scott, 146 Cal.App.3d 823, 194 Cal.Rptr. 633 (1983); Com. v. Wallace, 14 Mass.App.Ct. 358, 439 N.E.2d 848 (1982). Other states comply with Morissette by holding that their DUI statutes do not contain any presumptions and are general intent crimes. State v. Conner, 377 N.W.2d 664, 666 (Iowa App.1985), and cases cited therein. Still other states provide by statute that involuntary intoxication is a defense to criminal culpability. 720 Ill. Comp. Stat. Ann. 5/6-3 (West 1997) and Georgia Code Ann. § 16-3-4 (1997).

States which have been unwilling to recognize involuntary intoxication as a defense in DUI cases have rationalized that DUI is an "infraction" rather than a crime. State v. Hammond, 118 N.J. 306, 571 A.2d 942 (1990); State v. West, 416 A.2d 5 (Me.1980); People v. Teschner, 76 Ill.App.3d 124, 31 Ill.Dec. 691, 394 N.E.2d 893 (1979). The penalty for a first DUI violation in Florida, up to six months incarceration, is clearly more severe than what could qualify as an infraction under Morissette.