904 So.2d 601 (2005)
Eric William SMALLRIDGE, Appellant,
v.
STATE of Florida, Appellee.
No. 1D03-4751.
District Court of Appeal of Florida, First District.
June 20, 2005.
*603 Robert Augustus Harper, and Robert Augustus Harper, III, of Robert Augustus Harper Law Firm, P.A., Tallahassee, and Michael Robert Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, for Appellant.
Charlie Crist, Attorney General, and Carolyn J. Mosley, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
This is an appeal from two convictions of manslaughter while driving under the influence of alcohol (DUI) in violation of section 316.193(3)(c)3, Florida Statutes (2001). We affirm all issues and specifically address five of the eight issues raised.
Eric Smallridge first contends the lower court erred by instructing the jury it could find appellant guilty if he caused or contributed to the cause of the deaths of the two victims, because, at the time of the offense, the DUI statute only criminalized conduct that "caused" the death of a victim, not conduct that merely "contributed to the cause" of the death, and the information filed in the case alleged only the "cause" theory. Smallridge timely objected to the court's use of Florida Standard Jury Instruction (Criminal) DUI Manslaughter, which provides that before a jury can find a defendant guilty of such offense, the state must prove, among other things, that the "(defendant) caused or contributed to the death of (victim)." Appellant argues that the charge as given broadens the information by including a theory not authorized in the underlying statute, section 316.193(3)(c)3.[1] We reject this argument and conclude the term "cause" encompasses a cause which contributes to an injury.
In creating the DUI manslaughter instruction, the Supreme Court Committee on Standard Jury Instructions in Criminal Cases referred to the Florida Supreme Court's opinion in Magaw v. State, 537 So.2d 564 (Fla.1989), which, in construing the 1986 amendments to the DUI manslaughter statute, noted that before the revisions, the statute was, in effect, a strict-liability statute, and that the legislature had for the first time added to it a causation element. In particular, the court observed:
We conclude that the 1986 amendment introduced causation as an element of the crimes proscribed by section 316.193(3). We caution, however, that the statute does not say that the operator of the vehicle must be the sole cause of the fatal accident. Moreover, the state is not required to prove that the operator's drinking caused the accident. The statute requires only that the operation *604 of the vehicle should have caused the accident. Therefore, any deviation or lack of care on the part of a driver under the influence to which the fatal accident can be attributed will suffice.
Id. at 567 (emphasis added) (footnote omitted).
Smallridge takes particular comfort in a concurring opinion contained in a later opinion of the supreme court wherein Justice Anstead expressed criticism of the language of the instruction by its addition of the words "caused or contributed to the cause" of the victim's death, noting that such language "greatly expand[ed] the reach of this penal statute." State v. Hubbard, 751 So.2d 552, 566 (Fla.1999) (Anstead, J., specially concurring). Notwithstanding Justice Anstead's assessment of the statute, the majority did not incorporate his views within its opinion, wherein it observed that the standard jury instruction, as it pertained to causation, reflected the Magaw analysis, which in turn had recognized that a vehicle's operator need not be the sole cause of injury. Id. at 564. The court specifically noted that the 1986 amendments "included only a nexus between an accident and the operation of a vehicle." Id. In fact, no Florida court, since the adoption of the instruction, has disapproved its use. See, generally, Tyner v. State, 805 So.2d 862 (Fla. 2d DCA 2001); Gerlitz v. State, 725 So.2d 393 (Fla. 4th DCA 1998); Carter v. State, 710 So.2d 110 (Fla. 4th DCA 1998). As a consequence, we reject appellant's arguments that the trial court erred in giving the standard instruction on DUI manslaughter.
Neither can we agree with the argument that the lower court erred in denying appellant's motion to suppress the results of a blood-alcohol test on the ground that the blood was seized from him in violation of his Sixth Amendment right to counsel and his statutory right to an independent blood test. The record reflects that following the accident, occurring early in the morning of May 11, 2002, resulting in the deaths of two young women, investigating officers at the scene told Smallridge of the statutory requirement that he submit to a blood-alcohol test. Smallridge then placed a call to his father, an attorney, on his cellular phone, attempting to explain to him what had occurred, and the officers at that point took the phone from him and ended the call. After the blood draw, appellant was placed in the back of a patrol car for another 1-1/2 hours, without access to a telephone. One officer placed calls to numbers appellant provided to assist him in obtaining a ride home, but no one then offered him the use of a telephone or the opportunity to call his father. Appellant's friends collected him between 5:30 and 6:00 a.m., two to three hours following the draw.
At the hearing on the motion to suppress, appellant's father testified that had appellant been allowed uninterrupted telephone access with him, he would have advised his son of his right, provided by section 316.1932(1)(f)3, Florida Statutes (2001), to obtain an independent blood test. Smallridge argues that because he was denied the right to consult with his attorney/father after he had been placed under custodial arrest, he was similarly denied the opportunity to make a knowing request for an independent test, to which he was entitled by law, and as a result of the denial, the blood draw should be suppressed.
Although we are cognizant the Florida Supreme Court has held that "law enforcement must render reasonable assistance in helping a DUI arrestee obtain an independent blood test upon request," Unruh v. State, 669 So.2d 242, 243-44 (Fla. 1996), we note that Smallridge did not make such a request. Accepting appellant's *605 argument that he was effectively under arrest, although he was not formally arrested and, in fact, later that night was released and allowed to return to his home, competent, substantial evidence, in our judgment, supports the trial court's findings in its order denying the motion to suppress, reciting that notwithstanding the act of the officers in terminating appellant's telephone conversation with his father, appellant otherwise had the opportunity, had he availed himself of it, of seeking an alternative test. Among other things, the lower court pointed out that appellant had made several telephone calls to his father following the accident and before his cell phone was taken from him, and had access to other phones after his release from custody, yet he never expressed any interest in obtaining an independent test. In fact, as noted in the order, Smallridge, upon his release, passed a hospital located two miles from the crash scene where a test could have been performed.[2]
Smallridge further argues the trial court erred in allowing into evidence blown-up photographs of the decedents which depicted them inside the demolished automobile. The state answers that their admission was relevant for the reason that the photographs corroborated the expert opinion of an accident reconstructionist as to the speed appellant's vehicle was proceeding at the time of its collision. Although we consider their admission to be only marginally relevant, we conclude, even if the trial court could be said to have erred in allowing them into evidence, the error, met the harmless-error standard of State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986), in that the state successfully met its burden of proving beyond a reasonable doubt that the error complained of did not contribute to the jury's verdict. Other evidence, legally admitted, disclosed that at the time of the accident appellant had a blood-alcohol level of more than double the legal limit and had operated his vehicle at a speed of approximately 20 miles an hour or more in excess of the lawful limit.
Smallridge next contends the lower court erred in imposing restitution and costs upon him in the amount of $375 per month; notwithstanding the court's order declaring him an indigent defendant, recognizing he lacks the financial ability to make restitution or cost payments. We decline to reach this issue. The ability to pay restitution is a matter for consideration "at the time of enforcement of a restitution order-not at the time when the court is weighing the respective needs." Banks v. State, 732 So.2d 1065, 1070 (Fla. 1999) (emphasis omitted).
Finally appellant urges that the Florida Criminal Punishment Code (sections 921.002-.0027, Florida Statutes (2001)), under which he was sentenced, is facially unconstitutional in light of the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The facts in Blakely are altogether dissimilar to those at bar. In Blakely, the defendant pled guilty to kidnaping his estranged wife. Without departure, the presumptive sentence under the state of Washington's Guidelines Act was 53 *606 months' imprisonment. Because, however, the sentencing judge found the offense was committed with "deliberate cruelty," pursuant to a provision of the statute that permitted an enhancement if "substantial and compelling reasons [were found] justifying an exceptional sentence," 37 months were added, for a total sentence of 90 months. Although under Washington law, the maximum penalty for the offense the defendant was convicted was 10 years, the United States Supreme Court held the sentence imposed in excess of the guideline range was unconstitutional because it was based on a fact found by the court that was neither alleged in the charging document nor admitted by the defendant. As the Court explained:
Our precedents make clear ... that the "statutory maximum" for Apprendi [v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)] purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.
Id. at 2537 (citations omitted).
In the case at bar, appellant provides several examples which he contends show that the Code, as written, offends the Sixth Amendment right to trial by jury. Appellant points out that as applied to the victim-injury provisions of the Code, case law construes the Code as permitting a sentencing judge, rather than the fact-finder, to add victim-injury points pursuant to the range permitted in section 921.0024(1)(a), Florida Statutes, by a preponderance of evidence. See Gilson v. State, 795 So.2d 105, 110 (Fla. 4th DCA 2001). Appellant also complains that the provisions of section 921.0024(2), are in facial violation of the constitution because they create a "floating maximum," allowing a judge, not a jury, to increase the lowest permissible sentence authorized by the Code, if it is greater than the statutory maximum, based on factors not found by the jury.[3] He argues that without the improper enhancement, the trial court would have the discretionary authority to impose a lower sentence.
We decline to reach the merits of the constitutional challenge because we conclude appellant lacks the requisite standing to complain of the error he asserts. His facial constitutional challenge to the Criminal Punishment Code is not directed to a finding of fact the sentencing court made that had not been established by the jury. On his sentencing scoresheet, Smallridge was given 74 points for the primary offense of which he was convicted (DUI manslaughter), and 37 points for the second offense of DUI manslaughter. Finally, he was assessed 240 points for victim injury (the deaths of the two victims), for a total of 351 points, which translated into a permissible sentencing range of 20.1 years up to a maximum of 30 years. In finding Smallridge guilty of two counts of DUI manslaughter, the jury obviously decided *607 he had committed victim injury as well. His two consecutive sentences of 22 years (11 years for each of the two offenses) were within the sentencing range. Additionally, the lower court did not impose a single sentence in excess of the statutory maximum of 15 years for the second-degree felony of DUI manslaughter. § 775.082(3)(c), Fla. Stat. (2001). In fact, in entering the sentences, the lower court made no findings of enhancement, or otherwise, and sentenced Smallridge within the range established by the Code based solely on the jury's verdicts. The rule is well established that a person to whom a statute is lawfully applied cannot mount a facial challenge to it simply because its terms might be unconstitutional as applied to another person. See United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); Sandstrom v. Leader, 370 So.2d 3 (Fla.1979); Chambers v. State, 752 So.2d 64 (Fla. 1st DCA 2000).
AFFIRMED.
PADOVANO and THOMAS, JJ., concur; ERVIN, J., concurring in part and dissenting in part with opinion.
ERVIN, J., concurring and dissenting.
I concur in all aspects of the majority's decision except those relating to the affirmance of the lower court's order denying the motion to suppress the results of the blood-alcohol test and the admission of blown-up photographs of the victims. Because I believe these errors substantially contributed to the jury's verdict, I would reverse and remand with directions to conduct a new trial excluding the above challenged evidence.
As to the error relating to the suppression denial, I acknowledge that the record clearly discloses that on two occasions before his phone was removed, Smallridge was afforded the opportunity to confer with his father, an attorney. Yet it was not until appellant had placed the third call that the traffic investigation evolved into a criminal investigation. Smallridge had just been apprised of the deaths of the two occupants of the other car and was told he was required to submit to a blood test. While he was attempting to ask his father his legal options, his phone was taken from him. It is reasonably clear that at such time appellant was under custodial arrest. In fact, as the majority noted, a blood draw cannot be demanded under section 316.1933(1)(a), Florida Statutes (2001), unless the investigating officer has probable cause to believe the defendant operated his vehicle while under the influence, resulting in the death or serious bodily injury of another person. It is obvious that if the state had attempted to offer into evidence statements the defendant made after a criminal investigation had begun, without being advised of his Miranda rights, the statements would likely have been deemed inadmissible. See State v. Marshall, 695 So.2d 719 (Fla. 3d DCA 1996), approved, 695 So.2d 686 (Fla.1997). Clearly, once an arrest, formal or otherwise, occurred, appellant's right to consult with a lawyer matured. See § 901.24, Fla. Stat. (2001). The officers, however, denied him this right by taking away his phone and proceeding with the blood draw. No one at the scene, moreover, advised Smallridge of his entitlement to an independent test, although his father testified at the suppression hearing that if their conversation had not been terminated, he would have so informed him. Obviously, one who is unaware of a statutory right cannot be reasonably expected to avail himself of such right  any more than an uninformed defendant of his Miranda rights.
Although the facts before the supreme court in Unruh v. State, 669 So.2d 242 (Fla.1996), are not identical to those at bar because the defendant there  unlike *608 Smallridge  specifically requested a blood test be administered after being asked to take a breathalyzer test, and thereafter submitted to the breathalyzer examination upon being told his only options were to consent or refuse the test,[1]Unruh clearly requires suppression of the test results if the arrestee's right to an independent test has been frustrated by law enforcement's failure to render reasonable assistance to such person in obtaining the test. Id. at 247. In Unruh, the opportunity denied the defendant was the state's refusal to provide him with transportation and make arrangements for an independent test once he had requested it. In the case at bar, appellant's right to an independent test was effectively denied him by the investigating officers' active intervention in cutting off communication with his attorney, who testified that but for such act he would have advised his son to request a second test. Although the officers may have been under no legal obligation to inform appellant of such right, they surely had at the minimum a duty not to impede a call that was already in progress with his attorney, made for the purpose of apprising him of his rights as a person suspected of committing a vehicular homicide. See, e.g., Theel v. Comm'r of Public Safety, 447 N.W.2d 472 (Minn.Ct.App.1989) (holding that the trial court should have suppressed appellant's breath-test results, because police refused his request to call an attorney to help him obtain an independent test, thus hindering his statutory right to obtain an additional test).
In Unruh, the court described the type of assistance that must be provided under the terms of the statute:
In some cases, minimal aid such as providing access to a telephone and directory will be sufficient; in others, more active assistance such as transporting the arrestee to a blood testing facility will be necessary. Whether the assistance provided is "reasonable" and thus sufficient to satisfy law enforcement's duty under the statute will depend on the circumstances of each case.
Id. at 244.
The record in the case at bar discloses that Smallridge remained at the accident scene until friends picked him up at approximately 6:00 a.m., more than two hours after the blood draw. It is true, as the lower court's order notes, appellant was not thereafter restricted in making a call to his father and obtaining advice, but such efforts might well have been futile, because at least four hours had elapsed from the time of the accident until his release. See State v. Banoub, 700 So.2d 44, 45 (Fla. 2d DCA 1997) (discussing the requirement that a blood-alcohol test be administered within a "reasonable time" after a traffic stop, because the level of blood-alcohol depends upon the amount of food and alcohol ingested, combined with the passage of time). See also McNutt v. Sup. Ct. of Ariz., 133 Ariz. 7, 648 P.2d 122 (1982) (dismissing case because the police had not allowed the defendant to call his attorney while in custody, and an independent blood-alcohol test taken upon his release two and one-half hours after the traffic stop would have been meaningless); State v. Strand, 286 Mont. 122, 951 P.2d 552, 554 (1997) (observing that the right to obtain an independent blood test is rendered futile unless the defendant is apprised of such right upon arrest, due to "the evanescent character of blood alcohol evidence"), overruled on other grounds, State v. Minkoff, 308 Mont. 248, 42 P.3d *609 223 (2002) (holding that dismissal is the proper remedy for such a due-process violation, rather than the suppression remedy approved in Strand); Montano v. Sup. Ct. in Pima County, 149 Ariz. 385, 719 P.2d 271, 275 (1986) (stating that the defendant must be informed of the right to obtain an independent blood-alcohol test "prior to dissipation"). Indeed, the availability to appellant of an independent test at a nearby hospital, alluded to in the court's order, appears a problematic remedy in that, as the record discloses, law enforcement impeded appellant's opportunity to be made aware of such right.
Although Smallridge lacked the right to refuse the test authorized by section 316.1933(1)(a), he retained the choice under the statute of seeking an independent test; that option, however, was effectively denied him by the officers' active interference with his right to confer with an attorney. Because, under the circumstances, I consider it impossible to conclude that the officers rendered reasonable assistance to appellant in seeking the administration of an independent test, I am convinced the demands of the statute require nothing less than suppression of the blood-alcohol test results.[2]
I also am of the opinion that reversal and remand is demanded as to the issue regarding the admission of photographic evidence. In so saying I note that the defense stipulated during trial that the victims had died during the accident. As a result of this agreement, the trial court ruled the testimony of the medical examiner who conducted the autopsies of the victims was irrelevant, and, even if relevant, the potential for prejudice outweighed the probative value of such evidence. In my judgment, the trial court should have ruled similarly in regard to the submission of the photographs, which the state argues were admissible for the purpose of showing the crash damage of the vehicle occupied by the victims in order to corroborate the opinion of the state's expert witness as to the speed of appellant's Jeep at the time of impact. The difficulty with the state's argument is that such evidence was amply displayed to the jurors by the admission of photographs of the damaged vehicle after the victims' bodies were removed.[3] I might add that the photographs here at issue were not exhibited simply as blown-up photographs,[4] but were placed on an enlarged *610 screen as part of a Power Point presentation during the testimony of the state's accident reconstructionist.
Under the circumstances, I conclude, as did the Fourth District in Hoffert v. State, 559 So.2d 1246, 1249 (Fla. 4th DCA 1990), the trial court abused its discretion in admitting the blown-up photographs into evidence, because whatever minimal relevant value such evidence may have offered was far outweighed by the danger of unfair prejudice. As a result of the gravity of these two errors, I firmly believe nothing other than a new trial can be allowed, together with directions that the above evidence be excluded.
NOTES
[1] We note that the 2002 legislature amended the statute, following the date of the offense, by adding the words "causes or contributes to causing." Because the final staff analysis explained the amendment was created in response to Justice Anstead's concurring opinion in State v. Hubbard, 751 So.2d 552, 566 (Fla.1999), we conclude that the amended language was added simply to clarify preexisting legislative intent. See Fla. H.R. Comm. on Crime Prevention, Corr. & Saf., CS/CS/HB 1057 (2002) Staff Analysis 3, 5 (final Jun. 13, 2002).
[2] We cannot agree with the lower court's alternative conclusion that Smallridge was not legally entitled to an independent test once probable cause was established to believe that he had operated a vehicle while under the influence of alcoholic beverages, resulting in the death of another human being. Such interpretation is clearly at variance with the terms of section 316.1932(1)(f)3, authorizing the administering of an independent test, in addition to that administered at the direction of a law-enforcement official pursuant to section 316.1933(1)(a). The court should have read the two statutes in pari materia. See Mehl v. State, 632 So.2d 593, 594-95 (Fla.1993).
[3] Notwithstanding that the statute provides the "permissible range for sentencing shall be the lowest permissible sentence [under the code] up to and including the statutory maximum, as defined in s. 775.082," it further states: "If the lowest permissible sentence under the code exceeds the statutory maximum sentence as provided in s. 775.082, the sentence required by the code must be imposed."
[1] Unruh was arrested only for driving under the influence of alcohol, and therefore had the right, unlike Smallridge, not to consent to a test, a consequence that could result in a suspension of his driving privileges. § 316.1932(1)(a)1, Fla. Stat. (2001).
[2] In so concluding, I recognize that the jury also found Smallridge guilty of vehicular homicide, for which he was not adjudicated guilty because the court was not empowered to impose separate convictions for both DUI manslaughter and vehicular homicide, involving the same victims. See Ubelis v. State, 384 So.2d 1294 (Fla. 2d DCA 1980). Although vehicular homicide does not include alcohol impairment as an element of the offense, it does require proof that the defendant was driving in a reckless manner likely to cause the death of another person. § 782.071, Fla. Stat. I consider it impossible to say that the court's error in allowing the test results into evidence did not contribute to the verdicts rendered. If such evidence were excluded, the sufficiency of the evidence to convict Smallridge of vehicular manslaughter would at best be problematic. The collision occurred when he swerved his Jeep into the parallel lane occupied by the victims' vehicle in order to avoid colliding with another automobile which had abruptly merged into his lane of travel. Absent evidence of intoxication, the only evidence of reckless driving was speed and prior consumption of alcohol. In W.E.B. v. State, 553 So.2d 323 (Fla. 1st DCA 1989), this court held, on facts remarkably similar to those at bar, that the state's evidence did not support a conviction of vehicular homicide.
[3] In addition, the court permitted the jury to view the demolished automobile.
[4] One of the photographs depicts a victim with blood on her nose and other parts of her body.